No. 74.—THE COWETA FALLS MANUFACTURING COMPANY, plaintiff in error, *vs.* CURRAN ROGERS, defendant in error.

[1.] If A contracts with B to repair different parts of the machinery attached to the cotton factory of B, to-wit: the running machinery and two frames for spindles, the one not being dependent at all for its use upon the completion of the other, and the former is repaired and received by the owner, he cannot make the failure to deliver the other, an excuse for not paying for that which is finished and accepted.

[2.] Any necessary expense, which one of two contracting parties incurs in complying with his part of the agreement, may be recovered as damages, in a suit for a breach of the contract.

[3.] When an agency is once established, all that is done and said by the agent, in the execution of the contract, will bind the principal.

[4.] Where the verdict is strongly and decidedly against the weight of evidence, a new trial will be granted.

[5.] Prospective profits, which are speculative and conjectural, are usually too remote and uncertain to enter into the estimate of damages to be allowed for a breach of contract.

Complaint, in Muscogee Superior Court. Tried before Judge WORRILL, and motion for a new trial. Decided by Judge WORRILL, June Term, 1855.

Curran Rogers brought suit against the Coweta Falls Manufacturing Company, for damages caused by their failure to comply with a contract to repair certain machinery belonging to the plaintiff. The contract was, that the machinery was to be repaired as soon as it could be done, or by 1st July, 1851, except two spinning frames, which were to be finished by 1st September, 1851. The work could have been completed by 1st July, 1851. The agent, Crockett, who made the contract, testified that he was stopped by the president. Only a portion of the work was done. The spinning frames were not touched; they were much injured by exposure and bad usage. Rogers' mill was idle some 50 or 60 days, in consequence of the failure of the manufacturing company to perform their contract. The agent of the company induced Rogers to send his machinery to Columbus for repair. He lived in Thomaston, about 50 miles distant. Rogers' net profits from his mill would have been (the witnesses said) from $12 to $30 per day, if his machinery had been delivered according to contract. He had employed hands, bought cotton and made all necessary arrangements to start his mills 1st July, 1851. Defendant below proved that all the machinery necessary to putting the plaintiff's factory in op-

eration, was finished and delivered early in the summer of 1851. The repairing of this machinery was worth $300. The Jury returned a verdict for plaintiff, for $2.320 40.

A new trial was moved for on several grounds—

1st. Because the Court, when requested, refused to charge: That if defendant repaired any portion of the plaintiff's machinery, and plaintiff received it as repaired, the plaintiff is bound to pay defendant the value of such repairs; but charged, that if plaintiff received a portion under the expectation of the balance being completed under the contract, and the balance was not completed, he was not bound to pay for any.

2d. The Court erred in allowing evidence as to the cost of transportation of the machinery to and from Columbus.

3d. Because the Court erred, after having excluded testimony of witnesses as to what they had heard Crockett say as to *the terms of the contract*, in allowing them to prove what was done *under the contract*.

4th. Because the verdict was contrary to the charge of the Court in this: that the Court charged, that if such part of the machinery as was necessary to the running of plaintiff's mill, was finished and delivered by the time agreed on, then the plaintiff could recover no damage for the stoppage of his mill.

5th. Because the damages are excessive.

The Court granted the motion, unless plaintiff would remit $75, costs of transportation to and from Columbus, and $440 damage done in such transportation, and from exposure while in Columbus.

The defendant refusing to receive this remitter, the Court over-ruled the motion for a new trial, and error is assigned thereon.

A. II. COOPER and II. HOLT, for plaintiff in error.

DENTON & MOSES, for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

We cannot doubt the propriety of remanding this cause for a re-hearing. We propose to glance, cursorily, at the prominent points made by the bill of exceptions.

[1.] All the material portion of the machinery was repaired and carried home by the owner; two spinning frames, only, being left unfinished. The value of the machinery thus repaired and received back, if the testimony of the witnesses is to be credited, made the cotton factory to which it belonged, worth to its owner, $12 40 per day net pofits. The propelling machinery was not dependent, of course, upon the spinning frames. Now concede that Mr. Rogers received the propelling machinery under the expectation that the spinning frames would be repaired also, and they were not, is that a good reason why he should pay nothing for the propelling machinery? Did he derive no benefit from that which was finished? And shall he keep it and not pay for it?

[2.] We do not think the Court erred in allowing evidence as to the cost of the transportation of the machinery to and from Columbus, at least as to the two spinning frames. They were transported to the shop of the company, under a contract, to be repaired. If they were not, this useless expense was incurred by Rogers, in consequence of the failure of the company to perform their undertaking. It, as well as the damage done to the spindles while exposed at Columbus, constitute legitimate items of damage for the violation of the contract.

[3.] As to all that portion of the testimony which consisted of the acts and declarations of Crockett, we consider the rule to be this: it should have been submitted to the Jury to find, in the first place, whether or not the proof showed that Crockett acted as the agent of the company in making the contract? If so, then all he did and said in the execution of his agency, was admissible evidence, and bound his princi-

pal; otherwise, it should have been excluded from their consideration in making up their verdict.

[4.] That the verdict was contrary to the evidence as to the time the machinery was detained, there can be no doubt. According to the testimony of some of the witnesses, it was received at the time stipulated. By no interpretation of the proof can it be shown that it was delayed two months after the time stipulated for its completion; and yet, 60 days is assumed as the basis of the calculation for damages. Giving to the plaintiff the longest time proven, and the highest estimate as to profits, and the injury sustained, instead of being upwards of $1700, could not have amounted to $1200. On this branch of the case, we cannot doubt that the verdict was strongly and decidedly against the weight of evidence.

[5.] But was the basis upon which this judgment was rendered maintainable? It was founded almost exclusively upon speculative profits; it was a calculation upon conjectures, and not upon facts. We will not say that there is no case where the allowance of damages upon expectant profits is inadmissible; but we are quite sure that this is not one of them; the gains were too remote and uncertain, depending upon a variety of contingencies, the failure of any one of which would subvert the whole computation. Who will undertake to say and swear that a cotton factory in Georgia will pay expenses, much less yield a certain amount of net profits, for any given period? What a conflicting opinion and experience would such a question elicit! We are inclined to think that this whole testimony, as to the gains which the plaintiff would have derived from this contract, had he not been prevented from realizing them by the delinquency of the defendant, should have been rejected as too contingent and speculative, and too dependent upon the fluctuation of markets, the chances of business and other casualties, as to enter into a safe or reasonable estimate of damages. And in lieu thereof, a calculation should have been made of the loss actually sustained by the hire of hands, the interest on the investment, and solid data like these, as the *criteria* of loss by the deten-

tion of the machinery. We are aware that neither the English nor American Courts have been uniform in their adjudications upon this doctrine. Generally, the earlier decisions in both countries concurred in denying profits as any part of the damages to be compensated, and that whether in cases of contract or of *tort*. (2 *W. Blackstone*, 1078 ; 1 *Exchequer R.* 849 ; 11 *Penn. S. R.* 127 ; 1 *Gallison*, 314 *and* 325 ; 3 *Dall.* 338 ; 2 *Wheat.* 327 ; 3 *Ib.* 346 *and* 558 ; 5 *Ib.* 358 ; 17 *Pick.* 543 ; 1 *Howard*, 28 ; 21 *Wend.* 342 ; 3 *Barb. S. C. R.* 424.) But some of the more recent cases have doubted whether some of the precedents cited have not pushed the rule beyond the true line. (7 *Hill*, 62 ; 6 *Barb. S. C. R.* 419 ; 17 *Ala. R.* 689.)

Chancellor *Kent* says, that *speculative* profits are not allowed. (*Vol.* 11, 5th *Ed. p.* 480, *in* notes.) And perhaps the fable of the milk-maid in the spelling book, is the best illustration as to what is meant by this phrase.