CALLAWAY MINING AND MANUFACTURING COMPANY, Respondent, v. GEORGE W. CLARK *et al.*, Appellants.

*Damages.*—The measure of damages for the taking and detention of personal property will be the actual damages sustained by the seizure; the question of speculative profit or loss cannot enter into the estimate. Where a steamboat was seized, *held,* that the jury should not be allowed to speculate as to what might be the probable or expected profits or earnings of the boat. (Taylor v. Maguire, 12 Mo. 313.) Cited and approved.

*Corporation—Powers.*—Every corporation in this State has power to hold, purchase and convey such real and personal estate as the purposes of the corporation shall require, not exceeding the amount limited in the charter. Therefore, a corporation created for the purpose of mining and transportation of coal, etc., had the power to purchase and use a steamboat for the purposes of its business in transporting and delivering coal, etc.

### Appeal from St. Louis Circuit Court.

The defendants, by virtue of an attachment in their favor against one Roberts, had seized a steamboat belonging to the plaintiff, used in transporting coal from the plaintiff's railway and mines to Jefferson city. Roberts pleaded in abatement of the attachment, and the suit was dismissed. The plaintiff sued to recover damages for the seizure and detention of the boat. At the trial evidence was offered tending to show that the plaintiff had laid up their boat, and that it would not have been used during the period of detention.

The answer denied the corporate existence of plaintiff, the ownership of the boat, its wrongful seizure and detention,

and alleged that it was not enrolled or licensed to run as a steamboat, and pleaded a counter-claim.

The ownership of the boat was proved by parol testimony.

The court gave the following instruction for the plaintiff:

" If the jury believe that the defendants sued one A. S. Roberts, Jr., in this court, by attachment, in October, 1857, and caused a writ of attachment to be issued to the sheriff of Callaway county, and said writ was placed in said sheriff's hands to be executed; and that in December, 1857, the steamboat Dubuque was, at the instance of said defendants, seized under said writ by the sheriff of Callaway county, and taken and detained out of plaintiff's possession; and that said boat, at the time of said seizure, was the property of the plaintiff, and was in its employ when seized,—then the jury will find for plaintiff such damages as from the evidence they may believe it has sustained by the seizure of said boat."

The fifth and sixth instructions asked by defendants and refused, were as follows:

5. There is no evidence in this case that the plaintiff was the owner of the steamboat Dubuque on the fourth of November, 1857, when the boat was attached at the suit of the defendants.

6. The Callaway Mining Company could not own a steamboat at any time during the month of November, 1857.

The other instructions are referred to in the opinion.

*A. M. & S. H. Gardner*, with *S. Knox*, for appellants.

I. The plaintiff was a corporation possessing no powers except such as were granted by the act of incorporation. (Beatty v. Lessee of Knowles, 4 Pet. 152; 18 Ohio, 151; 16 Ohio, 97; Ang. & Ames on Corp's, § 160, 256, 111.)

The act of incorporation gives no authority to plaintiff to own steamboats. (Acts 1847, p. 151.)

II. The first instruction asked by defendants and refused should have been given. The plaintiff sued for damages for being kept out of the use of the boat for thirty-three days, and for wages of hands during that time. If the boat could

not have earned anything during that time, the damage sustained must have been nominal.

III. The second instruction of defendants, refused, should have been given. If the plaintiff did not intend to use the boat during the time it was detained, what damage could be sustained by being deprived of it ?

*Sharp*, for respondent.

I. The plaintiff had the right to own and use the boat, by its charter and the general statute and law. (Acts 1847, p. 151; Acts 1857, p. 352; Acts 1855, p. 266; R. C. 1855, p. 369; 2 Kent, 280, 281; R. C. 1845, p. 231, § 1.)

II. What the boat could or might have earned is a matter of mere speculation, not to be estimated by the jury. (Taylor v. Maguire, 12 Mo. 313; S. C. 13 Mo. 517; Blanchard v. Ely, 21 Wend. 342.)

BAY, Judge, delivered the opinion of the court.

This suit was brought in the St. Louis Circuit Court to recover damages for the seizure by the defendants of a steamboat called "Dubuque," alleged to be the property of the plaintiff. The defendants, by their answer, put in issue plaintiff's corporate existence, also its ownership and possession of the boat, and deny its wrongful seizure and detention. They also set up a counter claim, consisting of a promissory note for three hundred and thirty-three dollars and thirty-five cents, alleged to have been executed by plaintiff payable to the order of defendants. Plaintiff filed a replication denying the execution of the note. Judgment was rendered for plaintiff, to reverse which appellants rely upon several points, which we will notice in the order presented by the record:

1. It is contended that plaintiff had no power, under its act of incorporation, to purchase or own a steamboat. The act of incorporation was obtained for the purpose of carrying on the mining and transportation of coal, etc.; and hence, in the third and fourth sections power is given to the company

to construct and build a railroad or railroads from the coal lands in Callaway county to the Missouri river, at or near Coté Sans Dessein, and to acquire the right of way for the same. And by an amendatory act, approved March 5th, 1855, it is further provided that the company shall have power to purchase, hold and enjoy lands and tenements, hereditaments, goods, chattels and effects of what nature or kind soever, so far as needful, and purchased only for the carrying on of its business of mining and manufacturing in said county of Callaway ; and the same from time to time to grant, bargain, sell, or otherwise dispose of, in the prosecution of the legitimate interests of their said business.

The evidence shows that plaintiff had a contract to deliver a certain quantity of coal at Jefferson city, and that the boat was used and employed for the purpose of conveying coal from the terminus of the railroad to Jefferson city and other points on the river, and for no other purpose whatever. It is not necessary to determine whether the power to own a steamboat is an incident to a corporation of this kind, in the absence of any prohibitory clause ; for we think the amendatory act above recited is broad enough in its provisions to confer the power upon the company, so long as the boat is confined to the legitimate business of the company. We have, moreover, a general statute relating to corporations, approved March 19th, 1845, the first section of which declares that every corporation, as such, has power to hold, purchase and convey such real and personal estate as the purposes of the corporation shall require, not exceeding the amount limited in its charter ; and in the second section it is provided that the powers enumerated in the preceding section shall vest in every corporation that shall *hereafter be created,* although they may not be specified in its charter, or in the act under which it shall be incorporated.

The instructions given by the court are unobjectionable. One of them asked by defendants, relating to the measure of damages, declared that the plaintiff could only recover the actual damage sustained by reason of the seizure of the boat.

Callaway Mining and Manufacturing Company v. Clark.

But it is contended that the court erred in refusing certain instructions asked by defendants. The first instruction asked and refused, is as follows : " In case the steamboat Dubuque could not have earned any money during the time said boat was in the custody of the sheriff, at the suit of defendants, then the plaintiff can only recover nominal damages in this case."

The court very properly refused this instruction; for whether the boat could or could not have earned anything during the time she was in the custody of the sheriff, was a mere matter of speculation, with which the jury had nothing to do, and which was not susceptible of proof. The following is the second instruction refused : " If the purpose of the plaintiff was to lay up said boat Dubuque during the month of November or December, 1857, the plaintiff cannot recover in this case for the time it was the purpose of said plaintiff to lay up said boat." Upon what principle of law this instruction was asked, we are unable to comprehend. If the plaintiff had determined to lay up the boat for any given period, it could change that determination at any moment, it being a matter resting solely in the discretion and upon the will of the plaintiff. Third instruction refused : " Unless the jury believe from the evidence that the plaintiff has sustained a greater amount of damages by the detention of the steamboat Dubuque than the amount of the note and interest set up by the defendants as a counter-claim, then they will find for the defendants for the amount of said note and interest, less the amount of damages they may find said plaintiff may have sustained."

The refusal of the court to give this instruction did not operate to the prejudice of the defendants, for the jury in their verdict specially found for the defendants the full amount of their counter-claim, and deducted it from the damages which they found the plaintiff had sustained.

Fourth instruction refused : " If the jury find that plaintiff is entitled to recover for the taking and detention of the boat in question, then the measure of damages should be what

they may find from the evidence would have been the net earnings of the boat after deducting the cost of running her."

The objection to the second instruction applies with equal force to this. The jury will not be permitted to speculate as to what might be the probable or expected profits of a boat. (See Taylor v. Maguire, 12 Mo. 313.)

The fifth and sixth instructions refused relate to the ownership of the boat, and have already been disposed of.

The judgment will be affirmed, the other judges concurring.