TOMPKINS v. DALLAS COTTON MILL.

(Filed June 17, 1902.)

DAMAGES—Measure of—*Contract—Breach*.

Where a cotton mill has capital invested in its plant and other machinery, such capital being kept idle during the time a machinery company fails to deliver certain machinery according to contract, the measure of damages for such delay is interest on such idle capital and such losses and expenses as are incidental to the delay, such as insurance, idle labor, deterioration in its machinery, etc.

ACTION by the D. A. Tompkins Company against the Dallas Cotton Mill, heard by Judge *W. A. Hoke* and a jury, at July Term, 1901, of the Superior Court of MECKLENBURG County. From the judgment allowing the counter-claim, the plaintiff appealed.

Plaintiff brought this action to recover a balance of $15,-789.61 and interest, for machinery, materials, work and labor furnished and done for defendant under a contract, which is admitted in the answer.  For a counter-claim, defendant alleges that plaintiff made default in the compliance with its contract, in that it failed to furnish the machinery at the time agreed upon, and delayed the delivery thereof for several months, to its damage five thousand dollars.  There is no allegation or proof that defendant had made any contracts with third parties, securing to itself a determinate profit, which was known to plaintiff and contemplated by the parties at the making of the contract.

The breach is established by the verdict, and damages assessed at $1,900.  One of the exceptions of plaintiff is the admission of the evidence of Wilson as to the rental value. Upon his direct examination he testified that the reasonable rent of that machinery during the time between the 1st of November, 1899, and the 1st of March, 1900, was $1,500 per month, without reference to any special condition of the market, and without reference to any special contracts that he may have made or could make.  Upon his cross-examination, he testified that the mill (for which the machinery was purchased) had failed, for some time, before he took charge of it, to pay dividends, and "just along this line I want to explain," said the witness, the "character of this first machinery that was in there.  I wish to say that any mill-man would tell you that running a mill with only 2,000 spindles could not make as much as running a larger mill.  The kind of machinery that was first put in this mill was said to be not as profitable as other machinery.  The cost of running a small mill is much larger than running a large mill; also, that during the first years of this mill the prices were extremely low, and further, the mill made a mistake in her first superintendent; he didn't give anything like the production he ought

to have given. I wish to say that this new machinery was put in for higher class of goods, and this goods demanded a much higher price than the ordinary goods.

"Q. I understand you to tell that jury in answer to that question, in your opinion, this $15,000 worth of machinery was worth a mill $180,000 a year, year in and year out. Did I understand you to say that?

"A. Yes, sir; but I desire to make this calculation. At that time I was paying for cotton 7 1-4 cents a pound, average about that. I could manufacture this goods, and the class of goods I was making was two-ply lace curtain goods. This goods could be manufactured at 6 1-2 cents a pound, which would make it cost about 14 cents to get them on the market. In the year 1900 this goods was commanding from 21 1-2 cents to 26 cents a pound. The production of these spindles was 6,000 pounds weekly of 28-ply goods. Taking it at 21 cents, 14 from 21 we have a net profit of seven cents. That woud be $420 per week. That is the basis on which I base my calculation."

(Here plaintiff made a motion to strike out the witness' answer as to what was the average monthly rental value of this mill; overruled; plaintiff excepts.)

By the witness: "When I made that remark, I meant the mill was worth that much to me."

Upon his re-direct examination, he testified that the machinery would manufacture 6,000 pounds of No. 28 two-ply lace curtain goods per week, which, in 1899, was worth 21 cents per pound, then gradually went up to 26 cents in July, being 22 cents in December, 23 cents in February, and so on. In October, 1899, was paying for cotton 7 1-4 to 7 1-2 cents per pound; in January, 1900, 9 1-2 cents; that it cost about 6 1-2 cents per pound to do the spinning, and that the net weekly earnings would be not less than $375 or $400, and in about November it would have been possibly a little more.

As to this evidence, admitted over plaintiff's objection, plaintiff's counsel prayed the Court to give the jury this instruction: "That if the jury find that the statement of the witness E. L. Wilson, as to damages, to-wit, that the rental value of the machinery was fifteen hundred dollars per month, was made by him because in his estimate of such rental he considered the profits which he thought might have been made during the months of November, December and January, and until the machinery was put in operation, the jury will not consider this statement as testimony in this case, because, in that event, the statement was made upon a wrong principle and contrary to the instruction of the Court, as to the true basis for establishing such rental value."

The Court refused to give this instruction as it was asked to be given by the plaintiff, but gave it with the following modifications:

"1st. In so far as the witness Wilson may have made such profits the basis or data for a direct estimate, his testimony will be disregarded by the jury.

"2d. The product and profits of a given time are only testimony as circumstances bearing on the business generally, and in so far as it tends to determine risks and what is a fair rental return for the capital invested in such an enterprise, it should be considered by the jury."

The plaintiff excepted to the modification of this instruction in so far as it allows the jury to consider profits, even indirectly, in ascertaining the damages, if any, to be awarded to the plaintiff; and especially excepted to the second branch of the modification.

The Court then charged the jury that they "will not consider the aforesaid statement of the witness Wilson as to the rental value, or so far as the same is, in their opinion, founded upon the witness' estimate of profits, which the witness thought the machinery would have earned."

*Burwell, Walker & Cansler,* for the plaintiff.
*Jones & Tillett,* for the defendant.

COOK, J., after stating the case. It certainly appearing that the witness' estimate was based upon the profits growing out of circumstances then existing, we think his Honor erred in not striking out his entire answer, as moved for by the plaintiff's counsel. And there being no evidence that witness based his estimate or calculation upon any data other than those of profits, his statement, or estimate, should not have been submitted to the jury for consideration. The witness estimated the monthly rental value of the machinery to be $1,500, being the profits derivable from a rising market both as to the raw material purchased and the manufactured goods sold. But if the price of the manufactured goods had gone down with the rise in the raw material remaining, the result would necessarily have been different. So, it is clear to us that his estimate was based upon speculation and uncertain profits, depending upon a variety of contingencies, the failure of any one of which would subvert his whole calculation, and which are too remote and indeterminate to enter into and become the measure of damages. *Manufacturing Co. v. Rogers,* 19 Ga., 416. While it appears from his estimate that the market went in favor of defendant, and that it would have made a handsome profit if it had obtained its machinery, and gotten the same in good working order, and had had a sufficient number of competent employees and laborers and an ample supply of material, and met with no reverses, yet if the market had gone *contra,* and reverses had befallen it, then, instead of having a profit, it might have incurred a loss, in which event the default of plaintiff would have been a benefit rather than an injury. Nevertheless, as the injury can not be estimated by the standard of profits, the law will not allow it to go unredressed. The measure of damage is a fair

rental value of the mill for the loss of time caused by plaintiff's wrong—that is, the portion of the mill this machinery would have equipped. If this can not be otherwise accurately determined by certain and determinate data, which were contemplated by the parties and entering into their contract, then the law will allow the legal rate of interest upon the capital invested, to be the measure (*Rocky Mount Mills v. Railroad,* 119 N. C., 693, 56 Am. St. Rep., 682), not because it is an accurate criterion, but for the reason that it is approximately just. The party injured by reason of a breach of contract should be, so far as money can do it, placed in the same sitution with respect to damages, as if the contract had been performed. *Robeson v. Harman,* 1 Ex. Ch., 855-6. In the case at bar, there is no *certainty* as to what would have been defendant's situation if plaintiff had performed its contract; but it is shown that it had capital invested in its plant and other machinery which was kept idle during the time plaintiff was delaying the fulfillment of its contract, upon the value of which it is entitled to recover the legal rate of interest; and it may have incurred losses and expenses which were incidental to such delay, such as insurance, idle labor, deterioration in its machinery, etc., which could be considered if properly put in issue. The charge and rulings of his Honor, with respect to which other exceptions are taken, are sustained.

For the error above pointed out, a new trial is awarded.

New Trial.

FURCHES, C. J., concurring.  I agree in the conclusion that there should be a new trial.  As I remember the facts in the case, the defendant owned a cotton mill, which he was operating, and had been operating for some time.  But thinking it would be profitable to do so, he concluded to enlarge his mill, and for that purpose built an addition to his mill-house, in which to place new machinery.  He also made a contract with the plaintiff to furnish the new machinery necessary for this addition to his mill.  The machinery was to be furnished at a specified price, to be delivered by a specified time, and to be *paid for when delivered.*  The plaintiff furnished the machinery, but did not deliver it at the time specified in the contract, nor for some months afterwards.  The defendant failing to pay for the machinery after it had been delivered by the plaintiff, this action was brought for the agreed price of the machinery bought by the defendant and delivered to him by the plaintiff.  The defendant answered and admitted the contract and the receipt of the machinery, but alleged that it was not delivered at the time it was to have been delivered, whereby and by reason of which he sustained great loss and damage, which defendant set up by way of counter-claim and recoupment.

On the trial, the defendant undertook to prove speculative damages, and was allowed to introduce evidence to that effect, over the objection of the plaintiff.  This was error.  The evidence of Wilson, as reported in the case, should not have been allowed, and the opinion of the Court so states.

But I do not understand that the old mill, as I will call it to distinguish it from the new mill or addition, was stopped on account of not receiving the new machinery.  So I think the opinion of the Court erroneously allows the defendant damages for that.  The defendant had no money invested in the machinery sued for, as he was to pay for it *when delivered*, and has never paid for it yet.  He is, therefore, it seems

to me, not entitled to any damages on that account, unless he is entitled to speculative damages upon an estimate of what he *could have made* if the machinery had been delivered on time, as he claims he is.

Not being entitled to speculative damages, nor to damages for money invested in the machinery, as he had none invested, the only damages I can see that he is entitled to is the interest on the money invested in putting up the addition to his mill, preparatory to putting in the new machinery; for the reason that such a structure, without any machinery in it, could not be rented for any price.

The opinion of the Court allows the defendant to recover for *"insurance,* idle labor, *deterioration* in machinery," which he had not received nor paid for. This Court expressly held in *Alpha Mills v. Steam Engine Co.,* 116 N. C., 797, that the plaintiff in that case could not recover for *insurance.*

MONTGOMERY, J., concurs in the concurring opinion.