United Iron Works v. Twin City Ice & Creamery Company, Appellant. — 295 S. W. 109.

Division One, May 24, 1927.

**1. SALE: Delayed Delivery: Counterclaim: Speculative Damages: Loss of Business.** A vendor who fails to furnish machinery for a new use cannot be compelled to compensate the vendee for profits the vendee might have made had delivery been made within the time mentioned in the contract.

Anticipated profits can be recovered only for an interruption in an established business, and then only when the amount of actual loss can be rendered reasonably certain by competent proof; otherwise, the anticipated or expected profits are too uncertain, speculative and remote to permit of recovery. Where the seller sued for the balance due under a contract for machinery to be used in the equipment of an ice plant for the manufacture of ice, which was to be delivered by March 8th, but was not delivered until May and fully installed until July 17th, the vendee cannot recover on its counterclaim for the loss of profits it would have made on the sale of ice between May 1st and July 17th, on the theoy that had the machinery been delivered according to the agreement the plant would have been fully equipped and in operation by May 1st, and that by the delay it was deprived of the use of its plant and the profits it would have made from the sale of ice during those two months and seventeen days. Although the vendee had an established creamery business, proffer of proof that the purpose of the new equipment was to supply the trade with ice, as the vendor well knew, and that the delay in the delivery of the machinery caused the vendee during that time a loss of ten thousand dollars which it would have made from the sale of ice, at its fair and reasonable market value, should be rejected, and an instruction authorizing the jury to return a verdict for such loss should be refused, because the anticipated profits in the prospective use of the ice plant for the manufacture and sale of ice were too remote, uncertain and conjectural to constitute a reasonable and rational basis for the ascertainment and determination of such special damages.

2. ———: ———: ———: **Idle Workmen: Reimbursement.** The vendee cannot recover from the vendor as an element of damages the reasonable value of the services of workmen employed by him in the expectation of the delivery of machinery sold by the vendor for use in the equipment of a manufacturing plant, where, notwithstanding a delay in the delivery of the machinery beyond the agreed date of delivery, the workmen so employed were not kept in idleness awaiting the shipment, they were kept at work at something about the plant the most of the time during the period of delayed shipment, they were not paid at all when they performed no work or service, and no increase in their wages in installing the machinery after its delivery was made. Conceding that the workmen would not have been engaged by the vendee except in anticipation of the shipment at the time specified in the contract, the vendee cannot recover where the proof shows neither damages nor loss resulting from the delay.

3. **VERDICT: Counterclaim: Omission of Specific Mention.** A verdict responsive to the issues and by which defendant is given credit in a definite amount for every allowable item of damages mentioned in its counterclaim, although the word "counterclaim" is not used therein, is determinative of the issues presented by the counterclaim.

---

Corpus Juris-Cyc. References: **Appeal and Error,** 3 C. J., Section 1587, p. 1410, n. 42; 4 C. J., Section 3057, p. 1068, n. 22. **Damages,** 17 C. J., Section 117, p. 795, n. 95; p. 796, n. 96; p. 797, n. 97; Section 118, p. 797, n. 99. **Sales,** 35 Cyc., p. 578, n. 19; p. 632, n. 19. **Trial,** 38 Cyc., p. 1885, n. 98.

Appeal from Jefferson Circuit Court.—*Hon. E. M. Dearing,* Judge.

AFFIRMED.

*P. S. Terry* for appellant.

(1) "In an action for breach of contract such damage is recoverable as may fairly and reasonably be considered as arising naturally, that is, according to the usual course of things, from such breach or such as may be reasonably supposed to have been within the contemplation of both parties when they made the contract, as the probable result of the breach of it." Thirry v. Hogan, 181 Mo. App. 48, 61; Fitch v. Telegraph Co., 150 Mo. App. 149, 159; 17 C. J. 742; Hyatt v. Railroad, 19 Mo. App. 287; Howell v. Railroad, 171 Mo. App. 92, 101; Weber Implement Co. v. Harvesting Machine Co., 268 Mo. 363. (2) "As a general rule, a party is entitled to all legitimate expenses that may be shown to flow from or follow the breach of a legitimate contract, providing it appears that such expenses were the natural consequences of such breach and are reasonable, having regard to all the circumstances of the particular case." "There can be no doubt that the general intention of the law in giving damages in an action on contract is to place the party complaining, so far as this can be done by money, in the same or as good a position as he would have been if the contract had been performed. This is especially so where all the facts are known to the defendant." 13 Cyc. 61; Howell v. Railroad, 171 Mo. App. 92, 102; Graham Paper Co. v. Newspaper Association, 193 S. W. 1006; Chalice v. Witte, 81 Mo. App. 91; Shouse v. Neiswanger, 18 Mo. App. 244; Morrow v. Railroad, 140 Mo. App. 212; 17 C. J. 800. (3) "As a general rule a party is entitled to all legitimate expenses that he may show to have been incurred by him in an honest endeavor to reduce the damages flowing from or following the wrongful act. This rule applies equally to actions *ex delicto* and actions *ex contractu.*" 17 C. J. 806; Mitchell v. Violette, 203 S. W. 220; Gilwee v. Brewing Co., 195 Mo. App. 487; Smith v. Railroad, 127 Mo. App. 168; Weber Implement Co. v. Harvesting Machine Co., 268 Mo. 363. (4) "In an action for breach of contract damages cannot be denied merely because the exact amount is impossible of ascertainment, it being only the measure which must not be uncertain. All that can be expected in any case is that the relevant facts tending to show the extent of the damages be placed before the jury to enable it to make such an intelligent estimate of the same as the circumstances of the case will admit. The manner of measuring the damages having been ascertained impossibilities in proving the same are not required, but only that the best evidence be adduced of which the nature of the case is capable; in other words, the degree of certainty of proof is dependent upon the character of the proceeding." Kennett v. Katz Const. Co., 273 Mo. 279, 202 S. W. 561; Couch v. Railroad, 252 Mo. 34; Brokerage Co. v. Campbell, 164 Mo. App. 20. (5) "In an action for breach of contract where a party enters into a contract with the full notice of

the consequences that might ensue in case of delay, it is bound.in case of negligent delay for such special damages as naturally and proximately result therefrom which were reasonably within the contemplation of the parties. Notice to charge the defendant with special damages in case of negligent delay, as will bind the defendant, does not require positive information, but only such facts and circumstances that will put a person of ordinary caution in the same situation on inquiry that will lead to the knowledge or truth are sufficient when properly brought home to the defendant. And a well-recognized exception to the general rule that a commercial business is too remote and speculative is, that the loss of profits from the interruption of an established business may be recovered." Morrow v. Railroad, 140 Mo. App. 212; 17 C. J. sec. 113, p. 788; Green v. Cole, 24 S. W. 1058; Wolff Shirt Co. v. Frankenthal, 96 Mo. App. 310; Rhodes v. Lumber Co., 105 Mo. App. 315; Golman v. Shirt Co., 6 Mo. App. 495; Hicks v. Surety Co., 169 Mo. App. 491; Kerns & Lorton v. Telegraph Co., 174 Mo. App. 439; Gildersleeve v. Ocerstolz, 90 Mo. App. 525; Stewart v. Patton, 65 Mo. App. 21; Brandt v. Sherman, 60 Mo. App. 73. (6) "Where the court failed to determine the issues on the counterclaim, and it is apparent from the findings and record presented that the court or jury failed to pass on the issues raised on all the causes of action stated in both pleadings, this action constitutes reversible error." Marshall v. Armstrong, 105 Mo. App. 238; Henderson v. Davis, 74 Mo. App. 1; Hitchcock v. Baughan, 44 Mo. App. 42; Gawk v. Millowick, 203 S. W. 1006; Thresher Co. v. Speak, 167 Mo. App. 470; Disbrow v. Storage & Fuel Co., 170 Mo. App. 587.

*Clyde Williams* and *John F. Goshorn* for respondent.

(1) To entitle defendant to recover wages paid laborers while awaiting the arrival of the machinery to be installed, such laborers must of necessity have been under pay and idle during the time they were awaiting the arrival of the machinery. Morrow v. Mo. Pac. Ry. Co., 123 S. W. 1038. (2) The general rule as to the recovery of anticipated profits is that they are too remote, speculative, and too dependent upon changing circumstances to warrant a judgment for their recovery. The exception is the loss of profits from the interruption of an established business, and in such cases it is indispensable that proof of the expenses and income of the business for a reasonable time anterior to and during the interruption of the business be produced to sustain a lawful judgment for damages for a loss of anticipated profits. Morrow v. Mo. Pac. Ry. Co., 123 S. W. 1039; Taylor v. Maguire, 12 Mo. 313. The mere loss of opportunity to try to make profits is too uncertain to be compensated in damages. Sloan v. Paramore, 164 S. W. 667. (3) Where it is apparent from the ver-

dict and record presented that the jury considered and passed on the issues raised on each cause of action stated by the pleadings, it is not reversible error for the jury to fail to make a specific finding on each cause of action, and the finding of the jury for either party without mention of the petition or counterclaim, as the case may be, necessarily shows a determination of the cause of action which the jury did not mention. Cosgrove v. Stange, 183 S. W. 692.

SEDDON, C.—The petition herein is in two counts. The first count of the petition alleges, in substance, that plaintiff and defendant entered into a written contract (a verified copy of which is attached to the petition as an exhibit) on February 10, 1920, whereby plaintiff agreed to sell to defendant, and defendant agreed to buy from plaintiff, certain machinery and equipment for the production and application of refrigeration, known as an ice plant equipment, at and for an agreed price and sum of $6,280, payable in four installments of $1,570 each at certain specified times; that said machinery and equipment was delivered by plaintiff to defendant on the —— day of March, 1920, and was received by defendant and installed in its plant at Crystal City, Missouri; that defendant made the first two payments, aggregating $3,140, as provided in said contract, but has failed and refused to pay the balance of $3,140 due and payable under the terms of said contract; wherefore, plaintiff prays judgment against defendant for the sum of $3,140, with interest and costs, and that said judgment be declared and adjudged a first lien upon the machinery and equipment described in said contract, and that the lien be foreclosed and the machinery and equipment be sold thereunder. The second count of the petition is upon *quantum valebat,* whereby plaintiff seeks to recover the sum of $40, alleged to be the reasonable value of certain goods and merchandise sold and delivered by plaintiff to defendant at defendant's instance and request.

The answer admits the making of the written contract, which is the basis of the first count of the petition, and that defendant agreed to pay the contract price mentioned therein, but denies that plaintiff delivered the machinery and equipment in March, 1920. The answer further alleges that, as an inducement to defendant to buy said machinery and equipment, and as the essence of said contract, plaintiff agreed to ship all of said machinery and equipment on or before March 8, 1920; that defendant told plaintiff that said machinery and equipment was to be used, and was being purchased for the purpose of being used, for the season beginning May 1, 1920, and ending October 1, 1920; that plaintiff knew, and was so informed by defendant, that said machinery and equipment would have to be delivered and installed and ready for use on or before May 1, 1920,

317 Mo.—9.

but, notwithstanding said agreement and understanding, plaintiff failed to ship said machinery and equipment on or before March 8, 1920, and failed for a long time thereafter to ship the same; that plaintiff failed to furnish certain material which it was required to furnish under said contract, whereby defendant was compelled to buy the same elsewhere; that defendant paid the freight charges upon the two shipments of said machinery and equipment; that certain of the machinery was not of the size and dimensions specified in the contract, whereby defendant was required to take down and rebuild the walls of its plant in order to install the said machinery; that no appreciable amount of said machinery and equipment was shipped until May 4, 1920; that defendant, under the terms of said contract, furnished and employed workmen, who were held in readiness to install the machinery from March 8, 1920, the date of shipment provided by the contract, whereby defendant was compelled to pay out and expend large amounts for wages of such workmen, while they were awaiting the arrival and delivery of said machinery; that wages had increased in the meantime, causing defendant to pay out a large sum because of the increase in wages of the workmen employed by it to install said machinery; that, at the time of the making of said contract, plaintiff knew, and was informed by defendant, that the fair and reasonable net profits of defendant's business for the season between May 1 and October 1, 1920, would amount to the sum of $20,000; that, by reason of the failure of plaintiff to ship said machinery and equipment on or before March 8, 1920, in accordance with said contract, defendant was deprived of the use thereof for the part of the season of 1920, particularly between May 1 and July 20, 1920; that, by reason of plaintiff's failure to perform said contract according to its terms and provisions, defendant suffered actual damages in the sum of $20,000, for which amount defendant, by way of counterclaim, prays judgment against plaintiff. The second count of the petition is not controverted by the answer.

The reply is a general denial, with the plea that whatever delay, if any, there was in the delivery of the machinery and equipment, or in the installation of the same, was due to the inability of plaintiff to procure labor, materials and parts, and was due to delays of common carriers beyond the control of plaintiff, for all of which plaintiff states it is not liable in damages.

The execution of the written contract of sale was admitted by the parties on the trial and the contract was put in evidence by plaintiff. The contract is lengthy and consists of several parts, designated, respectively, as a "Proposal," an "Acceptance and Chattel Mortgage," and "Specifications." By the "Proposal," the plaintiff (called the seller) proposed to furnish to defendant (called the buyer) certain machinery and equipment for the production and application

of refrigeration, as described in the "Specifications" thereto attached. The "Proposal" contains the following paragraph: "Delivery under this contract is contingent upon strikes, accidents, ability of the seller to procure labor or materials or parts, delays of carrier, or delays of like or different character beyond the control of
the seller, and the seller shall not be liable for damages occasioned
by any such causes." The concluding paragraph of the "Proposal"
provides: "It is understood that no promises, agreements or understandings exist except as herein specified." In consideration of the
agreements contained in the contract on the part of the seller, the
buyer (defendant) agreed to pay to seller (plaintiff) the sum of
$6,280, as follows: twenty-five per cent cash when the acceptance
of the proposal is signed by buyer; twenty-five per cent cash when
the machinery or equipment is ready to ship; twenty-five per cent
cash when the machinery and equipment arrives at railway destination; and twenty-five per cent cash thirty days after said machinery
and equipment arrives at railway destination. The "Specifications,"
forming a part of said contract, provide that the buyer (defendant)
shall make all cash advances, such as freight and drayage, wages
for skilled men and labor, and such other disbursements as otherwise
would have to be made by seller in connection with the erection and
installation of said plant or equipment, and "all such advances made
for any item or items for which seller is liable under this agreement
[are] to be deducted by buyer from the last payment due in cash."
The seller, under the terms of the contract, is obligated to pay all
freight charges and the buyer is obligated to pay all drayage charges.
Under the caption "Shipping Instructions," the "Specifications" provide: "Shipments of material and equipment on this contract shall
be consigned to Twin City Ice & Creamery Company, shipment to be
made on or before March 8, 1920." The acceptance of the proposal
by defendant herein is dated February 10, 1920, and the acceptance
was approved in writing by plaintiff on February 16, 1920.

The evidence tends to show that shipment of a part of the machinery and equipment was made on March 20, 1920, and shipment of
the remainder was made on May 4, 1920, both shipments originating
from plaintiff's factory at Springfield, Missouri. The failure, or
refusal, of defendant to pay the last two installments of the agreed
purchase price, aggregating $3,140, is not controverted by defendant.
The evidence shows that defendant furnished and paid for certain
flanges, asphalt, insulation, and other materials necessary for the
proper installation of the equipment, and paid freight and other
charges, all of which should have been furnished and paid for by
plaintiff under the written contract. Plaintiff admitted, on the trial,
the furnishing of such items and the making of such advances by de-

fendant, and that the aggregate amount thereof is $1,030.14, which sum is properly chargeable to plaintiff under the contract.

Defendant's testimony tended to show that plaintiff's salesman, one Bodine, came to defendant's plant in 1919, took measurements thereof, and discussed with defendant's manager the location of the ice-making machinery; that plaintiff's salesman, Bodine, returned to defendant's plant in January, 1920, and took other measurements of the plant; that defendant's manager went to plaintiff's factory at Springfield, Missouri, in February, 1920, and discussed the matter of the purchase of the machinery and equipment with plaintiff's manager, one Daily. Mr. Schramm, defendant's manager, testified: "I went to Springfield and saw Mr. Daily there. I told him that I was needing the equipment and needed it as quickly as possible, as I wanted to get it in shape to run for the season, 1920. I talked to Mr. Bodine and the foreman and the master mechanic. Mr. Bodine seemed to be familiar with the country ice plant business. He undoubtedly knew when the seasons opened and closed. . . . I told those gentlemen I wanted the ice plant ready for operation not later than May 1st. I told Mr. Bodine that. I asked them if they had the material on hand, and they told me they had the material on hand with the exception of the tank steel. They said they might have it within a short time, but I can't recall the exact time. I then told them I could not accept the order and sign the contract in this condition. They then showed me some old tank steel and I asked them if that could be used, and we investigated it, and I inspected it and decided that it could be used and decided to take it, provided they could furnish the other material. . . . The ice season usually begins about the first of May in this locality. Ordinarily it wouldn't take over thirty days to install a plant like this one, taking into consideration the condition of the old building."

Mr. Daily, plaintiff's factory manager, testified: "I met Mr. Schramm [defendant's manager] about the 10th of February in my office. That was the time the order was signed. I told him we had the tank. I don't remember him making a statement that he wanted the plant in operation to begin the ice season of 1920. He said he wanted it as soon as he could get it. The tank was the important thing he was interested in, and we didn't have the raw steel and we told him that, but I told him we had sufficient amount of second-hand steel to make this tank and told him we could make an allowance between the price of new steel and the value of the old steel. He agreed to take the old steel, because he could get it quicker. I told him we would get the steel out by the 8th of March. . . . My understanding was he was getting ready to engage in the ice business. We sold him the plant in order that he might become engaged in the ice business. At the time we sold it to him we knew it was for the

purpose of engaging in the ice and creamery business. I don't know what time of the year the ice and creamery business begins in the counties in this part of the State. In some places it runs all the year around.'"

Plaintiff's refrigeration engineer, Mr. Solomon, testified: "I saw Mr. Schramm in Springfield about February 10, 1920. Mr. Schramm was conversing with Mr. Bodine, one of our salesmen, and I was there at the time attending to some other business. Mr. Bodine brought Mr. Schramm into the office and told me he was about to close the contract with Mr. Schramm. Mr. Bodine said he had agreed to furnish Mr. Schramm the second-hand tank material and that he was very anxious to get an early delivery. I told him I thought we were in a position to build this tank right away if he would take the contract. Mr. Schramm told him he was very anxious to get it as early as possible and we told him we thought we would be able to furnish it to him by the latter part of March. I believe that was all that was said on the subject at that time."

Defendant's evidence tended to show that the machinery and equipment was not completely installed in defendant's plant until July 17, 1920. Defendant offered evidence to the effect that it had employed workmen to install the equipment and had kept them in readiness for some six or eight weeks, awaiting the arrival and delivery of the equipment. However, defendant's manager testified that the workmen so employed were engaged during said time in other work for defendant, and that defendant had not paid wages for any work not actually performed by said workmen, nor had defendant paid wages for any time during which such workmen were idle. There was no evidence of an increase in wages during the time such laborers were employed by defendant. Defendant offered to prove, by way of special damages, its anticipated profits from the use of the ice plant equipment had the equipment been installed on May 1, 1920, instead of on July 17, 1920, and that, by reason of the delay in delivery of the equipment, defendant had suffered a loss of profits in the aggregate sum of $10,000. Defendant's offer of proof of special damages was rejected by the trial court, upon the objections of plaintiff thereto, on the ground that the offer of proof did not constitute a proper element of damage and was based upon mere conjecture and speculation. Plaintiff, over the objections of defendant, introduced evidence tending to show that the delay in shipment of the equipment was due to the inability of plaintiff to procure material, and to an interruption in railway traffic, caused by a strike of railway switchmen and an embargo by railway carriers on shipments of less than car-load lots.

Defendant admitted, on the trial, the delivery by plaintiff of the goods and merchandise mentioned in the second count of the petition,

and that the price of $40 charged therefor is the fair and reasonable value of such merchandise.

Defendant offered a demurrer to the evidence at the close of plaintiff's case-in-chief, and again at the close of all the evidence, which demurrers were overruled by the trial court. The court, at the request of plaintiff, instructed the jury that, if they believed and found from the evidence that plaintiff agreed to sell, and defendant agreed to buy, the machinery and equipment mentioned in the first count of the petition, and that the same was shipped and delivered by plaintiff to defendant and was received by defendant and installed in its plant at Crystal City, Missouri, then the jury should find the issues for plaintiff on the first count of the petition and assess plaintiff's damages at the sum of $3,140, "less such amounts, if any, advanced and paid by defendant for freight or express or telephone charges, and less such amounts, if any, disbursed by defendant in buying and furnishing materials of the kind and character, which by the contract were to be furnished by plaintiff and which plaintiff failed to furnish, and less such amounts, if any, which defendant was compelled to pay out for labor and material in altering the walls of the building or in changing any of the equipment, which alteration or change was made necessary by plaintiff's failure to furnish machinery or equipment of the proper size and character." Defendant asked the court to give two instructions (hereinafter referred to in the opinion), presenting defendant's theory of recovery upon its counterclaim, which instructions were refused by the trial court.

The jury returned a verdict in the following form: "We, the jury in the above-entitled cause, find the issues for the plaintiff on the first count of its petition in the sum of $3,140, *less the sum of $1,030.14 to which defendant is entitled to credit,* and we therefore find the issues for plaintiff on the first count of its petition and we assess its *net damages* on said count at the sum of *$2,109.86.* And we further find the issues for the plaintiff on the second count of its petition in the sum of $40." (Italics ours.)

Judgment was entered for plaintiff in the net sum of $2,109.86 upon the first count of the petition, and in the sum of $40 upon the second count of the petition, in accordance with said verdict, and motions for new trial and in arrest of judgment were duly filed by defendant. Upon the overruling of said motions, defendant was allowed an appeal to the St. Louis Court of Appeals, which court, upon its own motion, transferred the cause to this court upon the ground that the amount in dispute, exclusive of costs, exceeds the jurisdiction of the Court of Appeals.

I. Appellant makes a number of assignments of error. Several assignments, however, are not briefed by appellant, and we will

therefore treat such assignments as abandoned, confining our opin-. ion and rulings herein to those assignments which are briefed and. clearly relied upon by appellant on this appeal. Appellant assigns error in the rejection by the trial court of defendant's offer of proof of anticipated, or prospective, profits from the use of the. ice plant

**Anticipated Profits.** equipment had the equipment been delivered by plain-, tiff in time to have been installed and ready for use on May 1, 1920, instead of on July 17, 1920, the date of installation. The offer of proof, as made by defendant's counsel on the trial, is thus set out in the record: "I now offer to prove by this witness [defendant's manager, Mr. Schramm] that, in addition to making ice as a business, this company (defendant) was making ice cream, and with a fair and reasonable profit on its business if this plant had been installed on the 1st of May, 1920, and not on the 17th day of July, 1920, when it was installed; that they lost a busi-, ness, at a fair and reasonable market value, of ten thousand dollars." Appellant also assigns error in the refusal by the trial court of defendant's requested Instruction A, which was hypothesized upon the facts that it was agreed between the parties that the ice plant equip- ment was to be installed in time for use during the ice season for. the year 1920; that plaintiff agreed to ship said machinery so that it could be installed and used for the ice season 1920; that plaintiff failed to ship said ice plant equipment on or before March 8, 1920; and that, by reason of plaintiff's failure to so ship said ice plant equipment, defendant was deprived of the use of said equipment for a part of the ice season for the year 1920. The refused instruction would have authorized the jury, if they found the hypothesized facts to be true, to find the issues for defendant and against plaintiff. on the counterclaim "in such an amount as will equal the value, if any, of the use of said ice plant equipment from the beginning of the season of 1920, until said ice plant equipment was installed." In- asmuch as the two assignments of error are to be ruled by a single principle, or rule, of law, we will consider the two assignments to- gether as involving but a single question of error.

Appellant, as the ground of the foregoing assignments of error, relies upon the principles or rule of law announced in 1854 in the English case of Hadley v. Baxendale, 9 Exch. 341, l. c. 354, which principle seemingly has become well rooted in the case-law of England and America, to the effect that, "where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising nat- urally, i. e., according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the con-

tract, as the probable result of the breach of it." Appellant contends that the instant case falls within the foregoing principle of law, inasmuch as defendant's evidence herein tends to show that plaintiff knew, and was told by defendant, that defendant was purchasing the ice plant equipment for the season of 1920, and that the equipment must be shipped and delivered in time to be installed by May 1, 1920, the beginning of the ice season, otherwise defendant would lose the use of the ice plant equipment during such season, or at least for that part of the season until the equipment could be installed, ready for use. Respondent, on the other hand, contends that, by the weight of authority, anticipated or prospective profits are too remote, speculative, uncertain and contingent to constitute a proper element of damage and recovery, and, hence, that the trial court committed no error in rejecting defendant's offer of proof and in refusing defendant's requested Instruction A aforesaid.

As a general rule, the expected or anticipated profits of a commercial business are too uncertain, speculative and remote to permit a recovery for their loss. This general rule, however, is subject to the recognized exception that loss of profits from the *interruption* of an *established* business may be recovered, provided the amount of actual loss is rendered reasonably certain by competent proof; but it seems that in all such cases it must be made to appear that the business which is claimed to have been *interrupted* was an *established* one, and that such business had been successfully and profitably conducted, and had such a trade established, for such a length of time anterior to the interruption of business that the anticipated profits during such interruption may be reasonably ascertainable. [17 C. J. 795, 796.]

This court, in Weber Implement Company v. Harvesting Machine Co., 268 Mo. 363, while recognizing the rule or principle of law stated in Hadley v. Baxendale, supra, and contended for by appellant herein, clearly announced that such rule does not include speculative profits, or accidental or consequential losses, or the problematical profits of future bargains. Likewise, in Morrow v. Railway Co., 140 Mo. App. 200, the Springfield Court of Appeals held that anticipated profits are recoverable only when they are made reasonably certain by proof of actual facts which present data for a rational estimate of the amount of such profits, and, in order to recover such anticipated profits, the proof must show the expenses and income of the business for a reasonable time anterior to the interruption of such business, or facts of equivalent import, without which indispensable showing there is no rational basis by which a reliable estimate of future profits can be made, and without which proof such anticipated or expected profits are merely conjectural and speculative. So, in Sloan v. Paramore, 181 Mo. App. 611, the St. Louis Court of Appeals,

while recognizing the rule that probable profits of a commercial business constitute a legitimate element of damage where their extent can be shown with reasonable certainty, nevertheless ruled that, where such profits are purely speculative, contingent and conjectural, no recovery can be had with respect to them, and, furthermore, that the mere loss of an opportunity to try to make a profit is of too uncertain value to be compensated in damages. In the early case of Taylor v. Maguire, 12 Mo. 313, wherein Maguire sued Taylor in assumpsit for building a boat hull, and Taylor sought, by way of counterclaim, to recover anticipated profits claimed to have been lost because of the failure of Maguire to deliver the boat hull until two months after the time specified in the contract for such delivery, this court ruled that such special damages were not recoverable because, under the proof in that cause, they were too remote and speculative. The opinion in Taylor v. Maguire, supra, was cited approvingly by this court in Callaway Mining & Manufacturing Company v. Clark, 32 Mo. 305, which was an action for the wrongful seizure and detention of a steamboat under an attachment which was discharged, and it was held in that case that the jury, in determining the damages, could not be permitted to speculate as to what might, or might not, have been the earnings and profits of the boat during the period of detention.

It appears from the record herein that the ice-making machinery and equipment, which plaintiff contracted to furnish to defendant, was new equipment and was furnished for a new and original use, as distinguished from repairs made to previously existing equipment which had been in use in an established business. Sedgwick, in his recognized text on Damages (9 Ed.) sec. 183, announces this rule: "Where the defendant (vendor) fails to furnish machinery for a new use, he cannot be held to compensate the plaintiff (vendee) for the profits he might have made." In 17 Corpus Juris 797, the rule is thus stated in slightly different form: "Where a new business or enterprise is floated and damages by way of profit are claimed for its interruption or prevention, they will be denied for the reason that such business is an adventure, as distinguished from an established business, and its profits are speculative and remote, existing only in anticipation." The foregoing announcements of the rule are apparently amply supported by the adjudicated cases.

In Howard v. Manufacturing Co., 139 U. S. 199, an action by plaintiff to recover from defendants the contract price for furnishing and installing new machinery in defendants' flour mill, it was ruled that anticipated profits, resulting from grinding wheat into flour and selling the same had the machinery been installed at the date specified in the contract, could not be recovered under defendants' counterclaim, which alleged special damages arising from delay

in furnishing and installing the machinery, such loss of anticipated profits being held to be remote and speculative rather than direct and immediate. Likewise, in Blymer Ice Machine Company v. McDonald, 48 La. Ann. 439, and Consumers' Pure Ice Company v. Jenkins, 58 Ill. App. 519, cases quite similar in their facts to the instant case, anticipated profits, prevented by breach of contract on the part of the vendor to furnish and install ice-making machinery within a stipulated time, are held to be not recoverable by the vendee because they are too remote, conjectural and uncertain to constitute the basis of damages occasioned by the vendor's breach of contract. To like effect are Coweta Falls Manufacturing Company v. Rogers, 19 Ga. 416; States v. Durkin, 65 Kan. 101; Frazer v. Smith, 60 Ill. 145; and Winslow Elevator & Machine Company v. Hoffman, 107 Mo. 621.

The proof offered by appellant in support of its claim of special damages by way of anticipated profits in the prospective use of the ice plant equipment for the period from May 1 to July 17, 1920, was too remote, uncertain and conjectural, in our opinion, to constitute a reasonable and rational basis for the ascertainment and determination of such special damages, and the trial court did not err in rejecting the offer of proof of anticipated profits and in refusing defendant's Instruction A, the purpose of which instruction was to submit the ascertainment and determination of such special damages to the jury. The aforesaid assignments of error must be ruled against appellant.

II. Appellant assigns error in the refusal by the trial court of defendant's Instruction B, the purpose of which was to submit to the jury, as an element of damage and recovery under defendant's counterclaim, the fact "that defendant was compelled to keep, and did keep in readiness, workmen ready, willing and able to install said machinery at a time when defendant did not need the services of said workmen." While it may be granted, under our ruling in Hammond v. Beeson, 112 Mo. 190, that, in an action for breach of contract, a party injured by the breach is entitled to recover, by way of special damages, the reasonable value of the services of workmen employed by him, while such workmen are necessarily *idle* because of the breach of the contract by the opposite party, nevertheless the appellant has failed to show by its proof herein that the workmen employed by it to install the ice plant equipment were kept in idleness awaiting the shipment and delivery of the equipment; neither is there any proof herein of an increase in the wages of such workmen during the interim between the date of their engagement and the date of delivery of the equipment. On the contrary, appellant's manager testified that he kept the work-

**Idle Workmen.**

men at work around the plant "to keep them out of idleness;" that "they worked most all the time at something;" and that the workmen were not paid for any time when they performed no work or service at all. Such being the scope and extent of appellant's proof, it seems apparent to us that appellant failed to establish the fact that it suffered any loss or damage by reason of the employment of workmen and as a consequence of plaintiff's failure to ship the equipment within the time specified in the contract. Assuming that it may be reasonably inferred from appellant's proof that the workmen would not have been engaged by defendant at the time they were engaged except in expectation of the shipment of the equipment being made by plaintiff within the time specified in the contract, nevertheless the proof herein tends to show that the workmen at all times performed some service for appellant and also that they were not paid for any time when they were idle. Hence, the loss or damage, if any, resulting from the failure of plaintiff to ship the equipment within the contract time, as respects defendant's outlay or expenditure for labor employed, is not measureable or separable under appellant's proof herein, and a jury, if required to ascertain and determine such damages, could only have hazarded a mere guess as to the amount thereof. In view of the limited scope of appellant's proof herein, we think that the trial court rightly refused defendant's Instruction B aforesaid.

III. Appellant assigns error by the trial court in accepting the verdict and in rendering judgment thereon. Appellant claims that the verdict is incomplete, in that it contains no affirmative or specific finding upon defendant's counterclaim and fails to determine the issues presented by the counterclaim; hence, it is **Responsive Verdict.** claimed that the verdict is not responsive to all the issues raised by the pleadings herein. It is true that the verdict does not mention the counterclaim by name or appellation, but it does not follow therefrom that the jury did not pass upon and determine the issues presented by the counterclaim. On the other hand, it is quite apparent, we think, viewing the form and language of the verdict in the light of the pleadings and the proof herein, that the jury did consider and pass upon all the issues raised by the pleadings. Plaintiff, in the first count of the petition, pleads the written contract made by the parties on February 10, 1920; that, in consideration of the furnishing of the ice plant equipment by plaintiff, defendant agreed to pay plaintiff the aggregate sum of $6,280, in four installments of $1,570 each; that defendant made the first two installment payments, but failed to pay the balance, or last two installments, amounting to $3,140, for which sum plaintiff prays judgment against defendant. The answer admits the making

of the contract pleaded in the petition, and that defendant agreed to pay plaintiff the contract price as mentioned in the petition, and, by way of counterclaim, alleges that defendant was compelled to pay out a considerable sum of money for freight and telephone charges, flanges, asphalt, insulating and other material necessary for the proper installation of the machinery and equipment, and for labor and material used in taking down and rebuilding the walls of its plant in order to accomodate and install said machinery, all of which items or advances are alleged to be chargeable to plaintiff under the contract; and, furthermore, that defendant was deprived of the use of the machinery and equipment, and the profits therefrom, for a part of the ice season, beginning on May 1, and ending on July 20, 1920, and was compelled to pay out large sums of money by reason of keeping workmen employed in readiness to install the machinery at a time when plaintiff did not have the machinery on the ground and ready to install, for all of which items of damage defendant prays judgment against plaintiff in the sum of $20,000. The proof shows, and plaintiff concedes, that the defendant made advances in the aggregate sum of $1030.14, covering certain items of damage alleged in the counterclaim, which items were properly chargeable to plaintiff under the contract. The claim for loss of anticipated profits, as we have ruled, is not a recoverable item of damage under the proof herein; likewise, the claim for wages paid to workmen employed to install the machinery is not a recoverable item of damage, for the reason that there is no proof of loss to support that claim of damage. Upon the record herein, the only items of loss or damage recoverable by defendant under its counterclaim aggregated the sum of $1,030.14. The verdict reads: "We, the jury in the above entitled cause, find the issues for plaintiff on the first count of its petition in the sum of $3,140, *less the sum of $1,030.14 to which defendant is entitled to credit*, and we therefore find the issues for plaintiff on the first count of its petition and we assess its *net damages* on said count at the sum of *$2,109.86.*" The judgment follows the verdict, in that it is ordered and adjudged therein that "the plaintiff, United Iron Works, Inc., a corporation, have and recover of and from the defendant, Twin City Ice & Creamery Company, a corporation, upon the first count of its petition, the sum of $3,140, *less the sum of $1,030.14, making a net sum of $2,109.86.*"

It seems plain, and we think the conclusion is irresistible, that the jury, by their verdict, allowed to defendant all of the items of loss or damage which we find to be recoverable under the counterclaim. In so doing, the jury necessarily determined and passed upon all the issues raised by the pleadings, and therefore the verdict expressed the *net* result of their findings and solution of the entire controversy. Where, from the whole record, the conclusion is irresistible that the

jury did consider and determine the issues presented by the counter-claim, the verdict should be regarded as responsive to the issues although it does not mention the counterclaim by name. [Nowell v. Mode, 132 Mo. App. 232; Cosgrove v. Stange, 194 Mo. App. 14, wherein is to be found an exhaustive review and analysis of the cases on the subject.]

Finding no reversible error upon the record herein, the judgment of the trial court must be affirmed. It is so ordered. *Lindsay, C.,* concurs; *Ellison, C.,* not sitting.

PER CURIAM:—The foregoing opinion by SEDDON C., is adopted as the opinion of the court. All of the judges concur, except *Gantt, J.,* not sitting.