Lauderdale v. King.

LAUDERDALE, Appellant, v. KING, Respondent.

St. Louis Court of Appeals, March 31, 1908.

1. **PRACTICE: Inconsistent Theories.** Where a plaintiff, to whose action the defendant filed a counterclaim based upon a contract, asked and was given an instruction authorizing a verdict for plaintiff on the counterclaim unless the defendant had shown a "substantial compliance" with his contract, he was not in a position to ask other instructions requiring an *exact* compliance on the part of the defendant before the latter could recover on his counterclaim; that would be submitting instructions on inconsistent theories.

2. ————: Verdict: Definite Findings. In an action on promissory notes to which action the defendant filed a counterclaim for damages, a verdict by the jury finding that the amount due the defendant on the counterclaim "was equal to the amount of the notes sued on by plaintiff," was sufficiently specific and was equivalent to a finding of the amount due on the notes and finding a like amount to be due on the counterclaim.

3. ————: Evidence: Loss of Crop. A tenant leased a tract of land for three years with a stipulation in the lease that he should plant a certain portion of the ground in strawberries and in case the land should be sold before the expiration of the lease he should be paid the value of the strawberry patch. After the first year the landlord sold the place and the tenant yielded possession and brought suit for damages to recover the prospective profits on the strawberry patch for the ensuing two years of which he had been deprived by the sale. *Held,* evidence offered by the lessor tending to show a destruction of the strawberry crop by flood one season and the actual yield of another season, was admissible.

4. ———: ———: **Latent Ambiguity: Parol Evidence.** Where a contract of lease contained a clause relating to a certain strip of land and where the evidence showed there were two strips of land on the premises which answered the description, parol evidence was admissible to show which strip of land was meant.

Appeal from Barry Circuit Court.—*Hon. F. C. Johnston,* Judge.

REVERSED AND REMANDED.

*Mayhew & Sater* for appellant.

*T. D. Steele* for respondent.

BLAND, P. J.—The action was commenced before a justice of the peace and in due course reached the circuit court by appeal, where on a trial *de novo* verdict and judgment were for defendant. The controversy arose out of the following contract entered into by the parties on July 29, 1903:

"Article of agreement, made and entered into, by and between S. H. Lauderdale, party of the first part, and A. A. King, party of the second part.

"Witnesseth: That the first party, S. H. Lauderdale, has this day rented to said A. A. King, the east half of the northeast quarter of section 33, township 24, range 28, for the sum of $120, $60 to be paid August 15, 1904, and $60 to be paid January 1, 1905. All wheat, oats and corn, to be subject to levy and sale for the payment of one note dated July 29, 1903, for $60, and one note for $60 dated July 29, 1903, and made payable on January 1, 1905.

"The said A. A. King agrees and binds himself to sow in wheat the north side of the northeast quarter of said land, the same being 29 acres. All the land now in corn to be sowed in oats, cow peas and potatoes. All the valley land to be put in corn, and the land lying

south of the clover to be put out in strawberries, which the said party of the first part agrees to pay said A. A. King for in case he sells said farm, or refuses on his part to rent the said land to A. A. King longer than one year.

"If the said S. H. Lauderdale and A. A. King cannot agree as to the worth of the strawberries, each one is to pick a man and they are to pick a third man to say what the berries are worth. But in case said S. H. Lauderdale rents to A. A. King the farm for three years, the berry patch is the property of the party of the first part.

"The said A. A. King binds himself to give possession at the expiration of the first year without notice and further agrees that in case the said land is not rented to him for the year 1905, that he gives the said S. H. Lauderdale the right to enter on said land and plow for wheat August 1st. It is agreed that A. A. King is to have all strawberries grown on the land until October 15, 1906, then to turn said land over to S. H. Lauderdale. But it is further agreed that S. H. Lauderdale has the right to sell said farm or rent to any other party after the fifteenth of October, 1904, he paying A. A. King for said berries as before stated. A. A. King to gather all crops without hindrance," etc.

Defendant set about an acre in strawberries in the fall of 1903. Plaintiff sold his farm in July, 1904. He refused to agree on the value of the strawberry patch, or to arbitrate, as provided in the contract. Defendant refused to pay the rent notes, hence this suit by plaintiff to recover on the notes, and a counterclaim by defendant for the value of the strawberries. The questions of fact controverted on the trial are, first, the value of the strawberries and, second, whether or not they were set where it was stipulated in the contract they should be set. Defendant's evidence shows the strawberry plants were set south of the clover patch,

on a small strip of cleared land, and tends to show that the patch would have yielded, as a net profit in berries and plants, $100 or more for each of the years 1905 and 1906, if the patch had been properly cultivated and cared for but that the plants were suffered to be smothered out by weeds. Plaintiff's evidence tends to show that the patch was not planted south of the clover, on the land intended, but in the bottom, where it was agreed the land should be cultivated in corn; that this land was subject to overflow from surface water running down from an adjacent hill and was unsuitable for strawberries, and that the patch would not yield more than $20 per annum. Defendant's evidence shows that the patch was south of the clover patch but that a strip of sloping land lies between it and the clover; that the strawberry patch was not subject to overflow and the soil was well adapted for the growing of strawberries.

The following instructions given for plaintiff and defendant indicate the theory upon which both sides tried the case:

For defendant.

"1. The court instructs the jury that if you find and believe from the evidence that the defendant, A. A. King, put out strawberries on the farm that he had rented from the plaintiff in substantial compliance with the contract read in evidence, and that plaintiff sold said farm and has not paid for the berries as provided in said contract then in that event, you will determine from the evidence what the berry patch was worth on the ninth day of July, 1904, in view of the fact that the purchaser of said berries would be entitled to the use and benefit of said berry patch until the fifteenth day of October, 1906, and give the defendant credit for that amount. But in no event will you find the value of said berries to exceed the sum of $135."

For plaintiff.

"7. The court instructs the jury that the defend-

ant A. A. King, by way of counterclaim, seeks to recover the value of a certain strawberry patch mentioned in the written lease introduced in evidence; from the ninth day of July, 1904, to October 15, 1906; and in this connection you are instructed that before the defendant can recover on this counterclaim, it devolves upon him to prove by the preponderance or greater weight of the evidence that he in putting out the berries in question did so in substantial compliance with the written lease or contract introduced in evidence, and unless the defendant has so proven by the preponderance or greater weight of the evidence, your verdict will be for plaintiff on defendant's counterclaim."

The jury returned the following verdict:

"We, the jury, find that the value of the strawberry patch in defendant's counterclaim was equal to the amount of the notes sued on by plaintiff at the time of the institution of this suit, and therefore find the issues in favor of the defendant, A. A. King."

Plaintiff offered the following instructions:

"8. The court instructs the jury that although you may believe from the evidence that the berry patch in question was of some value, yet, if you further believe from the evidence that the defendant in putting out said strawberries put them in another and different place than that specified and agreed upon in the contract introduced in evidence, then the defendant cannot recover for said berry patch, and the plaintiff is under no obligation to pay for same and your verdict should be for the plaintiff on defendant's counterclaim, unless you further find that the berry patch was set out where it was in compliance with a subsequent verbal agreement.

"9. The court instructs the jury that the execution of the notes sued on in this case is admitted by the defendant. You will therefore find for the plaintiff

in the sum of $90, together with six per cent interest from the maturity of said notes.

"10. The court instructs the jury that that part of the contract which says, 'The land lying south of clover to be put out in strawberries,' means the land adjacent to or immediately south of the said clover."

The court modified instruction numbered 8, by adding thereto the following: "Or was in substantial compliance with the written contract read in evidence," and gave the instruction as modified, but refused to give numbers 9 and 10.

1. The modification of instruction number 8, and the refusal to give numbers 9 and 10 are assigned as error. There might be some force in plaintiff's contention, if plaintiff, by asking instruction number 7, had not assumed the position that defendant was not bound to an exact compliance with this stipulation of the contract but could recover on his counterclaim if he showed a substantial compliance with it. This theory of the case is inconsistent with the theory assumed in instruction number 8, as asked, and in the refused instructions. It is well settled that a party to a suit is not entitled to inconsistent instructions presenting different theories of the law to the jury and then complain that the court refused to adopt both theories. [Stevenson v. Hancock, 72 Mo. 612; Price v. Railroad, 77 Mo. 508; Roe v. Bank of Versailles, 167 Mo. 506; Straat v. Hayward, 37 Mo. App. 585.]

2. It is contended that the verdict is defective in that it fails to make separate findings on the petition and counterclaim. The verdict would have been no more certain or responsive to the issues raised by the pleadings had it specifically found the amount due on the notes and found the same amount due on defendant's counterclaim, in effect, the verdict shows that this is what the jury really did.

3. Charles Long, who purchased the farm from plaintiff, was a witness for him. He was asked if the water overflowed the berry patch in 1905 and scalded the berries. The question was objected to and the objection sustained. Plaintiff then offered to prove by the witness, that in the berry season of 1905, "water was running over and through said patch at said time sufficient to injure and scald the berries so they were not fit for market." Plaintiff also offered to prove that only twelve crates of berries were picked from the patch during the season of 1906. This evidence was excluded, to which ruling plaintiff saved an exception. Defendant counterclaimed upon the theory that he was entitled to recover the profits the berry patch would have yielded him in 1905 and 1906, had he been permitted to remain in possession of the land as tenant for those years. Therefore, evidence tending to show a partial destruction of the berry crop in 1905, from an overflow, and the actual yield in 1906, was clearly admissible to rebut plaintiff's evidence tending to show what the patch would have produced in those years.

4. The land to be put in strawberries is not described with sufficient definiteness and certainty to enable a court to put its finger on the spot. The evidence shows that there were two strips of land south of the clover patch and that the berries were planted on the strip farthest south from the clover. Plaintiff's evidence tends to show that the berries were to be planted on the land adjoining the clover. Defendant's evidence is to the contrary. If there had been but one strip of land south of the clover patch, there would be no difficulty in determining where the berries should have been set, but as the evidence shows there are two strips, either of which would answer the description in the contract, parol evidence was clearly admissible for the purpose of showing the identical strip intended,

and as the evidence as to the intended strip is contradictory, it should be left to the jury to find whether the berry patch was set where it was agreed it should be set. If it was not, defendant should not be allowed to recover on his counterclaim. If it was, or if the strip laying along the side of the clover patch was not understood by both parties to be the strip where the berries should be planted, defendant should be allowed to recover on his counterclaim. For error in the rejection of testimony, the judgment is reversed and the cause remanded. All concur.