Jim FORSYTHE, Plaintiff-Respondent,

v.

Thomas E. STARNES and Shirley
Starnes, Defendants-Appellants.

No. 37766.

Missouri Court of Appeals,
St. Louis District,
Division Three.

June 14, 1977.

Motion for Rehearing and/or Transfer
Denied July 21, 1977.

Roberts & Roberts, Geoffrey L. Pratte, Farmington, for defendants-appellants.

Charles W. Medley, James A. Alexander, Farmington, for plaintiff-respondent.

WEIER, Judge.

Plaintiff Jim Forsythe filed suit against defendants Thomas and Shirley Starnes, husband and wife, seeking to enforce a mechanic's lien and to recover on contract for work performed in building a house for Mr. and Mrs. Starnes. Defendants filed a general denial and counterclaimed alleging faulty and incomplete performance by plaintiff in Count I. In Count II defendants alleged a fraudulent change in the specifications from a five ton to a three and one-half ton air conditioning unit. During the three day trial the jury heard detailed testimony on numerous disputed aspects of the agreement and the condition of the house when defendants occupied it. The trial court rendered judgment for plaintiff in the amount of $5,500 in accordance with the jury's verdict. Defendants appeal contending the trial court erred in the giving of two instructions, in refusing to allow examination of witnesses on several subjects, and in accepting the jury's verdict, which they assert is defective as a matter of law. We reverse and remand for a new trial. A general outline of the facts will help illuminate the points raised by defendants.

Defendants discussed the construction of their house with plaintiff several times prior to the signing of the contract on May 1, 1972. The contract included by reference several pages of specifications entitled "Proposal Bid," prepared by plaintiff and signed by the parties. It called for a total price of $28,540 with "FINAL PAYMENT WHEN HOME IS COMPLETED AND/OR BEFORE OCCUPANCY BY OWNER." Concerning modifications, the contract states: "[T]his agreement may be limited or qualified only by a subsequent agreement dated and signed by all the parties hereto." The first page of the specifications states: "NEW HOME AS PER PLAN." The last page of the specifications provided two alternates, one on an outside deck and the other on masonry work.

A brochure prepared by a "house plan" company with a brief diagram of the floor plan of the house as well as a drawing of what the completed landscaped home could look like was used by defendants as a worksheet to make some of the modifications they wanted. This brochure was not given to plaintiff but he did receive a blueprint of the floor plan and an elevation drawing or "picture" of the house as well as a set of modifications drawn up by defendants.

Plaintiff received one set of blueprints some time before beginning work on the house. This contained only two pages, one a floor plan and the other a picture of the front elevation. Charles Trautman, mana-

ger of Farmington Building Supply who helped plaintiff figure the lumber for the job, also stated that plaintiff had only two pages of blueprints and that the two pages were hooked together. This was disputed by defendants who testified the set of blueprints like the ones given plaintiff were detailed and contained five or six pages.

After the subfloor was in and the walls were laid out, plaintiff's set of the blueprints got wet in the rain. This "pretty well" destroyed them so "[y]ou couldn't read 'em you know, and tell what, what was what." From that point on plaintiff no longer had any blueprints but he did have the modifications drawn up by Mrs. Starnes. The original modifications were not introduced into evidence and plaintiff could not remember if they got wet or were thrown away.

Defendants ordered a second set of blueprints which contained eleven pages of plans. The house depicted therein was called the "Normandie" whereas the one shown in the brochure, which is the house defendants, wanted, was called "The La-Salle." The plans were similar.

Defendants' modifications included many changes from the brochure and blueprint plans. Some of the changes were as follows: An exterior storage area was converted into a den or office; the fireplace was moved from an outside to an inside wall; the stairs to the basement were made to wind near the top; a utility room was eliminated and made part of a bathroom; the furnace was moved to the basement; at least one closet was made smaller; a snack bar area was added in the kitchen; two sliding doors were added; one door was made into a window; and several windows were centered in the interior room wall.

Donald Brockmiller, an experienced general contractor called as a witness by defendants, testified that a builder could go ahead and build a house without plans or specifications but that it would take a lot of detailed work with the owner to find out where things were supposed to be. Defendants did visit the construction site once a day on the average. Plaintiff testified that during these visits defendants ordered many further changes in various parts of the house including altering the front porch, adding window wells, and centering windows with respect to the inside rooms instead of the outside walls.

Work on the house began May 15, 1972. There was some discussion during contract negotiations concerning a completion date. It would seem from the testimony that a completion date of September 1, 1972, was set, subject to weather conditions. Nothing about it is mentioned in the written contract. Defendants moved into the house about October 15, 1972, at which time plaintiff "thought the house was finished" but defendants thought it was "[v]ery, very uncompleted." When defendants moved in they had many complaints about the house, some of which were remedied to their satisfaction.

Still disgruntled over other problems in the house, defendants refused to pay plaintiff the remaining portion of the contract price. Farmington Building Supply Company filed suit against defendants to enforce a mechanic's lien and defendants paid them $3,750. Defendants also paid Trogdon Ready Mix $1,166.42 as a result of a lien notice. Plaintiff then filed this suit against defendants to collect the balance due on the contract. Defendants counterclaimed alleging that much of the work on the house was either: (1) inadequately or improperly done; or (2) built without defendants' authorization. They also claimed they were defrauded in that when plaintiff changed some proposed specifications to accommodate defendants' requests, plaintiff also changed a specification for an air conditioner, from a five ton unit to a three and one-half ton unit.

The items defendants claimed were built in an unworkmanlike manner or otherwise contrary to the agreement included the following: improper roof bracing, wavy-looking ceilings, cracked front steps, unsightly off-centered linen closet and door, straight stairs leading from the basement instead of having the top segment wind ninety degrees, electrical wiring unsafe and not in

compliance with the National Electric Code, three improperly placed windows, an off-centered toilet and a vanity shorter than called for in the blueprints. Plaintiff's evidence indicated that some of these complaints may have been exaggerated, some things could not be built the way defendants wanted them (the stairs and the linen closet), and some things were built the way they were because defendants requested them to be built that way (front windows and perhaps the linen closet).

Items built which defendants claim were not authorized included an eight foot by thirty foot deck, four window wells and additional electrical outlets. Plaintiff conceded that twenty more electrical outlets were installed than the contract called for. However, plaintiff stated the deck and window wells had been authorized. There was conflicting testimony on this subject as well as nearly all other items.

In addition to the stated contract price, plaintiff claimed defendants owed him money for several items. These include time and material for installing the deck, window wells and electrical outlets, and for reworking the front porch. Plaintiff also claimed compensation for the three items which were undisputably authorized (storm door, roof vents and fluorescent light). Although defendants had not repaired any defects in the house during the three years they lived there prior to trial, they presented testimony and exhibits on what it would cost to improve the wiring and alter alleged structural defects in the house. They also introduced cancelled checks showing the rent paid while waiting to move into the house.

The jury returned a verdict assessing plaintiff's damages at $4,700 together with $800 interest, or a total of $5,500.

In this appeal defendants seek a new trial on several grounds. We agree that defendants should be given a new trial because of errors in the instructions. In addition to discussing these issues, this opinion will also cover other points raised by defendants which could arise again during retrial. Another matter not raised by the parties also

must be discussed. This concerns a problem in not requiring the jury to return multiple verdicts, one on plaintiff's claim and two on defendants' counterclaim. When the case is retried with the jury returning several verdicts, the complexion of the case will change such that one of the instructions which was erroneous under the way the case was tried will no longer be defective (Instruction No. 2) and one other instruction will have to be altered to be compatible with the new verdict forms (Instruction No. 7). These problems will be discussed in greater detail under the issues where they arise.

Defendants first contend the trial court erred in giving Instruction No. 2 because it assumed the contract terms had been completed, thus ignoring an evidentiary dispute as to several of the terms. Instruction No. 2 is here set out:

Your verdict must be for Plaintiff, on Plaintiff's claim, if you believe:

First: Plaintiff, in good faith, substantially performed the work required of him by the Contract mentioned in evidence, and

Second: Defendants have not paid the amount required by said Contract.

unless you believe that Plaintiff is not entitled to recover by reason of Instruction No. 4.

The term 'substantially performed' as is used in this Instruction, means that the construction had progressed to the point that the house could be put to the use for which it was intended.

Defendants assert that MAI 26.06 or some form of it should have been used because the terms of the agreement were in issue. Defendants claim the prejudicial effect of this error is shown by the fact that the jury's verdict ($4,700 plus $800 interest) exceeded the amount due on the contract without extras so that the jury must have awarded plaintiff money for some extras without requiring the jury to find that the disputed extras were in fact part of the contract. However, according to plaintiff's

testimony there was about $4,883[1] owing on the contract even without the disputed extras. Thus the verdict of $4,700 did not necessarily award plaintiff for disputed extras and any prejudicial effect in the giving of Instruction No. 2 is not readily apparent.

We agree, however, that Instruction No. 2 may not be a model instruction for this type of case. And indeed there was dispute in many areas as to what the terms of the contract were. A nonexclusive list of the disputed terms would include the following: whether a five ton or three and one-half ton air conditioner was called for; whether plaintiff agreed to wire the house according to the National Electric Code; whether the deck, window wells and twenty additional electrical outlets were authorized by defendants; whether plaintiff agreed to complete the house by September 1, 1972; whether the plaintiff agreed to secure lien waivers; whether the contract called for roof bracing; whether the front bedroom window was to be centered according to the inside room; whether the sliding glass doors were to be centered in the family room; whether the vanity was to be five feet long; whether a toilet was to be centered; and whether defendants authorized a change in the size of the linen closet. As stated in *Varn Company v. Hamiltonian Federal Savings and Loan Association of Ferguson*, 488 S.W.2d 649, 651[3] (Mo.1973), an instruction directing a verdict for plaintiff if "defendant did not pay to plaintiff plaintiff's reserve fund under their agreement" was improper because it did not submit to the jury and require a finding as to what agreement, if any, was made when there was substantial dispute as to the existence and terms of the oral contract. *See also, Laclede Investment Corporation v. Kaiser*, 541 S.W.2d 330, 338–39 (Mo.App. 1976) (error to use MAI 26.02 because meaning of a partnership agreement was in dispute and the instruction ignored this issue). The reasoning of these cases could apply here as well except for one problem. Defendants have not informed this court how these matters could be submitted to

the jury under some form of MAI 26.06 without transgressing the requirement of Rule 70.01(a) that instructions "shall not submit to the jury or require findings of detailed evidentiary facts." *Bullock Company, Inc. v. Allen*, 493 S.W.2d 5, 7[6, 7] (Mo.App.1973) (instruction submitting plaintiff's failure to build a garage in three separately described particulars properly refused because it would have submitted evidentiary facts).

■ Even if Instruction No. 2 improperly omitted this arguably essential element, such omission is cured by reference to Instruction No. 5 submitted by defendants, wherein the jury was required to find for defendants on defendants' counterclaim if plaintiff agreed either to build the house according to "the plans and specifications," or with good workmanship, or to complete the house by September 1, 1972, or to obtain lien waivers and plaintiff failed to perform in any of these respects. Although ordinarily the "omission of an element from a verdict director is not cured by reference to another instruction, *Milliken v. Trianon Hotel Co.*, 364 S.W.2d 71, 75 (Mo.App.1962) and *Elmore v. Illinois Terminal RR Co.*, 301 S.W.2d 44, 47 (Mo.App.1957)." *Vic Koepke Excavating & Grading Company v. Kodner Development Company*, No. 37207 (filed February 15, 1977, Mo.Ct.App. St. Louis) (p. 12), there is an exception where the omitted element is viewed as a matter of affirmative defense raised in a counterclaim such as in the case at bar. *Vic Koepke Excavating & Grading Company v. Kodner Development Company, supra* at 12–13, citing *Brush v. Miller*, 208 S.W.2d 816, 820 (Mo.App.1948). Under these circumstances Instruction No. 2 is not inadequate for failing to require the jury to find what the contract terms were.

■ Defendants also claim error in giving Instruction No. 2 because it failed to require the jury to find that plaintiff had been damaged. Plaintiff contends such a finding was not required here because this

---

1. $28,595 (contract price plus undisputed authorized extras) minus $23,712 (total credited to defendants according to plaintiff) equals $4,883.

case is similar to a suit on an account where plaintiff necessarily is damaged simply because the full contract price has not been paid. If the jury found, as required by the instruction, that "First: Plaintiff, in good faith, substantially performed the work required of him by the Contract mentioned in evidence, and Second: Defendants have not paid the amount required by said Contract," then plaintiff necessarily has been damaged by the failure to pay and no separate finding on this issue is needed. *See,* MAI 26.03, 26.04 and 26.05. However, defendants assert that a finding of damage was required in this case because the jury could find there was no *net* damage to plaintiff because defendants' counterclaim exceeded plaintiff's claim. A counterclaim includes set-off and recoupment. *Schroeder v. Prince Charles, Inc.,* 427 S.W.2d 414, 419[4] (Mo.1968). "Recoupment goes to mitigation or extinguishment of plaintiff's damages but permits of no affirmative judgment for the defendant . . . as is permitted if defendant elects to set up his own damages by way of a counterclaim." *Edmonds v. Stratton,* 457 S.W.2d 228, 232[8] (Mo.App. 1970). *See also, Brush v. Miller, supra.* In the case before us where the jury was requested to return only one verdict, there was evidence from which the jury could have found that defendants' damages on their counterclaim (perhaps as much as $6,553) exceeded the amount owing plaintiff on the contract (between $4,613 and $5,507) so that there was no net damage to plaintiff. Under these circumstances the jury should have been required in Instruction No. 2 to find that plaintiff was damaged.[2] *S. P. Personnel Associates of San Antonio, Inc. v. Hospital Building & Equipment Co., Inc.,* 525 S.W.2d 345, 349–50 (Mo. App.1975), cited by plaintiff, is distinguishable. In that case the court approved a verdict director for plaintiff which did not require a finding that plaintiff had been damaged. But the court did not discuss whether such a finding was necessary. Further, defendant there admitted it was liable to plaintiff for some damages, so there would have been no reason to submit this issue to the jury.

For the reasons mentioned *infra,* the jury, in the event of a retrial, should return more than one verdict. If this is done, it will not be necessary to include a finding of damage to plaintiff in plaintiff's verdict director because the damage due to defendants' refusal to pay is obvious and need not be submitted and the determination of net damage owing between the parties based upon the verdicts returned will be made by the trial court in its judgment.

 Defendants' last complaint concerning Instruction No. 2 is that it gave an unnecessary and materially misleading definition of "substantially performed." The definition stated: "The term 'substantially performed' as is used in this Instruction, means that the construction had progressed to the point that the house could be put to the use for which it was intended." This definition is reasonably accurate. *Southwest Engineering Company v. Reorganized School District R–9,* 434 S.W.2d 743, 751[19] (Mo.App.1968). *See generally,* 13 Am. Jur.2d, Building and Construction Contracts, § 43, pp. 46–48. Citing the general rule that the trial court should explain to the jury the meaning of legal or technical terms in instructions, but the meaning of ordinary words used in their usual or conventional sense need not be explained, *S. P. Personnel Associates of San Antonio, Inc. v. Hospital Building & Equipment Co., Inc., supra* at 350[17], defendants claim "substantially performed" is an ordinary term rather than a legal or technical one. It is true that *Moore v. McCutchen,* 190 S.W. 350, 352[9] (Mo.App.1916), relied on by defendants, found no reversible error in the trial court's failure to define "substantially" and "material omission or defect" appearing in an instruction which read in part:

---

**2.** The same finding of net damage was handled differently in *Vic Koepke Excavating & Grading Company v. Kodner Development Company,* No. 37207 (filed February 15, 1977, Mo.Ct.App. St. Louis) (p. 11), where the jury was instructed to deduct defendants' set-off damage from plaintiff's damages and "[i]n the event [defendant's] damage is equal to or exceeds plaintiff's damage, your verdict must be for defendant."

"[I]n suits on building contracts, a literal compliance with plans, specifications, and drawings by the contractor is not necessary to recover; and if you find from the evidence that [plaintiffs] in good faith, performed the contract on which recovery in this suit is sought, *substantially* and in all particulars, according to the terms and the plans, specifications, and drawings without a *material omission or defect* in such performance, that is sufficient to constitute compliance with the contract." But although not articulated in the reasoning of that decision, it seems obvious that the disputed terms were, in substance, already defined in the instruction in which they appeared, such that further explanation was not necessary. The case does not hold that "substantial performance" is an ordinary rather than a legal or technical term. In other cases, moreover, the words "substantially performed" have frequently been defined by Missouri courts.[3] This is one factor indicating the term is of a legal or technical nature. *Transportation Equipment Rentals, Inc. v. Strandberg*, 392 S.W.2d 319, 324[8] (Mo.1965). This fact, together with the determination in *McAlpine Company v. Graham*, 320 S.W.2d 951, 954[5] (Mo.App.1959) that an instruction was erroneous because it "contained no standard or guide by which the jury could determine whether the defects [in plaintiff's performance] were of sufficient substance and materiality to say that plaintiff had substantially failed to perform the contract . . . ," convince us that the term "substantially performed" is a legal and technical term rather than an ordinary one. It is therefore apparent the trial court did not commit reversible error by explaining the meaning of this term to the jury in Instruction No. 2.

Defendants' second major contention concerns Instruction No. 7. This damage instruction told the jury:

If you find in favor of Plaintiff, then you must award him such sum as you believe is called for by the Contract, less payment, together with six percent (6%) interest thereon from January 1, 1973, less such sums necessary to correct any defects in Plaintiff's performance of the Contract.

Defendants assert "defects in Plaintiff's performance" is too narrow and the jury should have been told that defendants were entitled to an offset for other items including: (1) compensation for failure to complete the contract on time; and (2) costs necessary to bring the house into conformity with the plans and specifications. These items are part of defendants' counterclaim and they appear in Instruction No. 5, the verdict director for the counterclaim. Plaintiff contends "defects in Plaintiff's performance" is a general term encompassing all items of damage to which defendants are entitled.

As we have previously stated, a counterclaim includes set-off and recoupment. *Schroeder v. Prince Charles, Inc., supra* at 419[4]; *Edmonds v. Stratton, supra* at 231[5]. "Recoupment goes to mitigation or extinguishment of plaintiff's damages but permits of no affirmative judgment for the defendant . . . as is permitted if defendant elects to set up his own damages by way of a counterclaim." *Edmonds v. Stratton, supra* at 232. That part of Instruction No. 7 allowing the jury to deduct from plaintiff's damages "such sums necessary to correct any defects in Plaintiff's performance of the Contract" apparently was to provide for recoupment. But it was confusing and misleading to include this deduction in plaintiff's damage instruction when defendants' counterclaim instruction contained basically the same recoupment allowance in a much more specific and detailed manner. While Instruction No. 7 told the jury to deduct for "defects in Plaintiff's performance of the Contract," Instruction No. 5 authorized a counterclaim in favor of defendant if the jury found "First, Plaintiff agreed either: to build the house according to the plans and specifications, or to build

3. See, e. g., State ex rel. Stites v. Goodman, 351 S.W.2d 763, 766[1] (Mo.banc 1961); *Southwest Engineering Company v. Reorganized School District R–9, supra* at 751[19]; *Julian v. Kiefer,* 382 S.W.2d 723, 728[6] (Mo.App.1964).

the house with good workmanship, or to have the house ready for occupancy by September 1, 1972, or to obtain from all materialmen and subcontractors proper lien waivers, and Second, Plaintiff failed to perform his agreements in any one or more of the respects submitted in Paragraph First, and Third, Defendants were thereby damages [sic]." If Instruction No. 7 had referred to the counterclaim for the recoupment allowance there would have been less confusion. But as the instructions were submitted, the two allowances for defendants were never explained or collated. The confusion in this regard was compounded by requiring the jury to return only one verdict.

■■■ We also agree with defendants that the deduction allowed them in Instruction No. 7 was too narrow and did not include all items to which they were entitled by way of recoupment. Absent excuse or waiver, a contractor is liable for damages accrued as a direct and natural consequence of breach of an agreement to complete a construction project by a certain date. *Herbert & Brooner Construction Co. v. Golden,* 499 S.W.2d 541, 548–50[15, 20] (Mo. App.1973), and "in the case of substantial but defective performance, . . . the owner is entitled to have the contractor's recovery[4] reduced by the amount that would reasonably be required to remedy the defects and make the structure conform to the plans and specifications." *Southwest Engineering Company v. Reorganized School District R–9, supra* at 751[20], citing *Talbot-Quevereaux Const. Co. v. Tandy,* 260 S.W.2d 314, 316[1] (Mo.App.1953). Stated differently, the owners "are entitled to an award or credit of such sum as will fairly and reasonably compensate them for defects in the building due to defective materials or unskillful labor and for items omitted by plaintiffs in the performance of the

contract." *Julian v. Kiefer, supra* at 730[15]. However, it should be noted that the owners may not recover for the cost of reconstruction and completion in accordance with the contract if this would involve unreasonable economic waste (destruction of usable property). *North County School District R–1 v. Fidelity & Deposit Company of Maryland,* 539 S.W.2d 469, 480 (Mo.App. 1976), citing *Samuels v. Illinois Fire Insurance Company,* 354 S.W.2d 352, 357 (Mo. App.1961). As pointed out in the *North County School District* case, *supra* at 480, n. 21, if unreasonable economic waste would occur in bringing the structure into conformity with the contract, the owner's *damages should* be calculated by the difference in value formula. This formula is simply the difference between the value of the structure as completed and the value the structure would have had if it had been constructed according to the terms of the contract. 13 Am.Jur.2d, Building and Construction Contracts, § 79–80, pp. 79–83; see, *Freeman Contracting Company v. Lefferdink,* 419 S.W.2d 266, 276 (Mo.App.1967); *Hotchner v. Liebowits,* 341 S.W.2d 319, 332[25] (Mo.App.1960).[5]

■■■ For the reasons stated, Instruction No. 7 was bad. On retrial the jury will return multiple verdicts and the trial court will compute the net award, if any, between the parties. In this event plaintiff's damage instruction should not include anything about defendants' recoupment allowance. This allowance will be made when the jury determines defendants' damages, if any, on their counterclaim. We note that in this case MAI 4.01 was used as defendants' damage instruction on their counterclaim. At least until a more detailed form is provided, the use of MAI 4.01 is appropriate in this type of case. *North County School District R–1 v. Fidelity & Deposit Company*

---

4. The amount owing the contractor may include extras provided they were properly authorized. *Herbert & Brooner Construction Co. v. Golden, supra* at 547[10, 11]; *Julian v. Kiefer, supra* at 730[15].

5. *But see* 13 Am.Jur.2d, pp. 80–81 where some cases (not Mo.) hold that in the case of dwellings, as opposed to commercial structures, due

to esthetic value, the contractor is always liable for the cost to make the house conform to the contract specifications. For a good discussion of the factors involved in determining which measure of damages to use in a given case *see* D. Dobbs, Remedies, § 12.21, pp. 897–903 (1973).

of Maryland, supra at 480. But as the North County School District case, supra, points out, with the use of MAI 4.01, the measure of damages becomes a matter of evidence and that evidence "should conform to the rules relating to damages by defective construction," and hence it should not include any evidence on costs to reconstruct the structure where unreasonable economic waste would occur. (Such as, for example, the estimates for moving the front windows for $412 and shortening a bathroom closet and lengthening the vanity by twelve inches for $1,059—the bid made by a contractor-witness.)

▆▆▆ Defendants' third point on appeal is that the trial court erred in limiting interrogation of the parties in two areas. The first area concerns alleged contemporaneous collateral agreements that plaintiff install the wiring in accordance with the National Electric Code and obtain lien waivers from suppliers. Although much testimony was admitted on these two subjects, defendants contend the trial court should not have limited their cross-examination of plaintiff on these matters because the evidence was not in violation of the parol evidence rule in that the alleged agreements were collateral to the written contract and not in conflict with it. The general rule in this regard is stated in South Side Plumbing Co. v. Tigges, 525 S.W.2d 583, 588[7] (Mo.App.1975) as follows: "Testimony concerning a prior or contemporaneous agreement, if consistent with the writing, may supplement a writing incomplete on its face, but should not, in any case, be permitted to vary or contradict the writing." The rule permitting parol evidence of a collateral agreement "is especially applicable where such agreement operates as an inducement to the complaining party to enter a written agreement." Frimel v. Blake, 360 S.W.2d 258, 261[1] (Mo. App.1962). Defendants pleaded and argued the admissibility of the lien agreements on this theory. Here the writing is incomplete on its face and the disputed collateral agreements would merely supplement and not contradict the written agreement. Garden Park Homes Corporation v. Martin

Marietta Corporation, 507 S.W.2d 368, 373–74[1–2] (Mo.1974); Beuc v. Morrissey, 463 S.W.2d 851, 853–55[1] (Mo. banc 1971). (But where instrument is a complete integration of the agreement of the parties see, South Side Plumbing Co. v. Tigges, supra at 588). In the event of a retrial, this evidence would be admissible.

We have faced this issue not because it is determinative in the outcome of this appeal, but rather because of its importance on retrial. Although defendants' amended counterclaim included a claim concerning lien waivers as an inducement to enter into the written contract, the counterclaim does not allege the agreement on the National Electric Code was part of the inducement. In fact there is no mention of the National Electric Code in the counterclaim, even though defective wiring is there alleged. But if this issue is properly pleaded and raised, the problem of admissibility and limitation of cross-examination may again arise and should be resolved in light of the above authorities.

▆▆▆ The second area of disputed evidence concerns Count II of defendants' counterclaim wherein defendants alleged that when plaintiff changed some proposed specifications to accommodate defendants' requests, plaintiff also changed a specification for an air conditioner, contrary to defendants' understanding that it would not be changed, from a five ton unit to a three and one-half ton unit. One specification in the contract (item 6) states: "150,000 B.T.U. Electric Forced Air Heat with Electric Air Conditioning, 3½ ton." Some testimony on the size of the air conditioner listed in the original proposal was admitted, but the trial court refused defendants' offer of proof to show that a change without assent had been made during the direct examination of Mr. Starnes. Parol evidence is admissible to vary or contradict a written contract if the party offering the parol evidence pleads and proves the following requisite elements of actionable fraud: "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of

its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury." *Beshears v. S–H–S Motor Sales Corporation,* 433 S.W.2d 66, 70[2] (Mo.App.1968). An offer of proof based upon a proper pleading of these elements should be granted. But here the offer of proof failed to include them and the evidence was properly excluded.

Defendants' fourth contention is that the trial court erred in not permitting defendants to show damages, including attorney's fees, sustained by plaintiff's failure to obtain lien waivers "because such damages are allowable when incurred due to a party's involvement in collateral litigation because of another party's breach of duty." Defendants were permitted to show how much they had paid suppliers who had filed liens against them but they were not permitted to testify as to other costs (presumably attorney's fees) incurred as a result of the liens filed against them. Defendants made no offer of proof on this subject and the point is not preserved for review. *Elliott v. Richter,* 496 S.W.2d 860, 864[1] (Mo. 1973). But we discuss this in view of the probability of retrial.

In Missouri attorney's fees are ordinarily recoverable only when authorized by statute or contract, when a court of equity finds it necessary to award them in order to balance benefits, or when they are incurred because of involvement in collateral litigation. *Moore v. City of Pacific,* 534 S.W.2d 486, 505[28] (Mo.App.1976). To be awarded attorney's fees incurred as a result of collateral litigation, the wronged party must show that the litigation was the natural and proximate result of the wrong or breach of duty by the other party, that the fees were necessarily and in good faith incurred to protect the wronged party from injury and that the amount of the fees is reasonable. *Johnson v. Mercantile Trust Company National Association,* 510 S.W.2d

33, 40[6] (Mo.1974). If defendants prove these necessary elements on retrial, they would be entitled to reasonable attorney's fees.

One final matter concerning the verdicts to be returned on retrial must be discussed. Here only one verdict was returned but recovery could be had on all claims. A finding for plaintiff on plaintiff's claim and for defendants on each count of defendants' counterclaim would not necessarily be inconsistent. *Schroeder v. Prince Charles, Inc., supra* at 419[4–6]; *MFA Cooperative Association of Ash Grove v. Elliott,* 479 S.W.2d 129, 133[6, 7] (Mo.App. 1972); *Edmonds v. Stratton, supra* at 232. The reason such findings would not be mutually exclusive or inconsistent is that where each party has committed a wrong against the other, each has a cause of action against the other. See 3A Corbin on Contracts, §§ 709–710, pp. 334–343. A valid claim on the part of one party does not prevent a valid claim for the opposing party. There are no MAI verdict forms, however, for such a case.

In determining what type of verdict forms would be proper in this situation, we are guided by the rule that the trial court should give verdict forms which will completely dispose of all claims. *Rozen v. Grattan,* 369 S.W.2d 882, 888[7] (Mo.App. 1963). Although several cases have held, in situations involving counterclaims, that one verdict is sufficient, *Brandtjen & Kluge, Inc. v. Hunter,* 235 Mo.App. 909, 145 S.W.2d 1009, 1014[8, 9] (1940), cited in 20 Am.Jur., Counterclaim, Recoupment, and Setoff, § 157, p. 364, other cases approve of one verdict only where a verdict on the opposing claim can be implied. *United Iron Works, Inc. v. Twin City Ice & Creamery Co.,* 317 Mo. 125, 295 S.W. 109, 115–16[4–5] (1927); *Staples v. Dent,* 220 S.W.2d 791, 792[2] (Mo.App.1949); *Ragsdale v. Young,* 215 S.W.2d 514, 516–17[2] (Mo.App.1948); *Humphries v. Shipp,* 238 Mo.App. 985, 194 S.W.2d 693, 699–700[7, 8] (1946); *Lauderdale v. King,* 130 Mo.App. 236, 109 S.W. 852, 854[2] (1908). *See generally,* 89 C.J.S. Trial § 504, pp. 175–177. The better procedure to

be followed in such cases, to avoid any possible doubt or confusion, is to require the jury to return separate verdicts on plaintiff's claim and the defendants' counterclaim. *MFA Cooperative Association of Ash Grove v. Elliott, supra* at 133[4–7]; *Ralston Purina Company v. Kennedy,* 347 S.W.2d 462, 466 (Mo.App.1961); *Blackman v. Botsch,* 281 S.W.2d 532, 535 (Mo.App. 1955); *Brush v. Miller, supra* at 820[9].[6]

After the verdicts are returned, the court should subtract the smaller from the larger and enter judgment for the amount of the balance in favor of the party with the larger verdict.[7] If the verdicts favoring both parties were in equal amounts, neither party would be entitled to a money judgment and the court should so indicate in the judgment. To avoid any confusion, it would be appropriate for the judgment to spell out the steps taken to arrive at the net award. *See, e. g., United Iron Works, Inc. v. Twin City Ice & Creamery Co., supra* at 115, (judgment for plaintiff "in the sum of $3,140, less the sum of $1,030.14 [as a set-off for defendant], making a net sum of $2,109.86)."

Upon retrial of this case, if submissible claims are presented, the jury should be required to return verdicts on the claim and each count of the counterclaim on verdict forms consistent with the considerations discussed herein.

Judgment reversed and cause remanded.

KELLY, P. J. and GUNN, J., concur.

---

**6.** In a case where defendant seeks recoupment or set-off to mitigate plaintiff's damages but does not assert a counterclaim, one verdict is sufficient. *See Vic Koepke Excavating & Grading Company v. Kodner Development Company,* No. 3207, —— S.W.2d —— (filed February 15, 1977, Mo.Ct.App. St. Louis).

**7.** The jury need not be instructed by the court that this will be done, but it would be appropriate for counsel in closing argument to explain what the trial court will do with the verdicts. Such an explanation would reduce the possibility of inconsistent verdicts such as occurred in cases such as *MFA Cooperative Association of Ash Grove v. Elliott, supra* at 133, and *Ralston Purina Company v. Kennedy, supra.*