**Henry E. DOSS, Respondent,**

v.

**EPIC HEALTHCARE MANAGEMENT COMPANY, Appellant,**

v.

**Boatmen's Bank of Southern Missouri, Respondent.**

No. 22548.

Missouri Court of Appeals, Southern District, Division One.

June 24, 1999.

Motion for Rehearing and Transfer to Supreme Court Denied July 16, 1999.

Application for Transfer Denied Aug. 24, 1999.

Stuart H. King, Joseph S. Dressner, William H. McDonald & Associates, P.C., Springfield, for appellant.

W. James Foland, Joanna Fryer, Foland & Wickens, P.C., for respondent Boatmen's Bank of Southern Missouri.

No other appearance.

CROW, Judge.

This litigation began when Henry E. Doss ("Doss") sued EPIC Healthcare Management Company ("EPIC"). EPIC subsequently filed a third-party petition against Boatmen's Bank of Southern Missouri ("Boatmen's") seeking indemnity from Boatmen's for any damages EPIC was compelled to pay Doss, together with attorney fees incurred by EPIC in defending itself against Doss's claim.

The trial court granted a motion by Doss for summary judgment against EPIC, awarding Doss $19,250.24 principal, $7,723.52 interest, $8,901.34 attorney fees, and costs. The trial court also granted a motion by Boatmen's for summary judgment in its favor on EPIC's third-party petition. EPIC appealed.

In *Doss v. EPIC Healthcare Management Company*, 901 S.W.2d 216 (Mo.App. S.D.1995), henceforth designated "*Doss–I,*" this court reversed the judgment in toto and remanded the case to the trial court for further proceedings. The reasons for reversal, together with a chronology of the dispute, are set forth in *Doss–I* and are not repeated here. *Doss–I* should be read as a preface to the ensuing disquisition.

Some twenty-two months after the trial court received this court's mandate in *Doss–I,* the trial court, on motion of EPIC, dismissed Doss's claim against EPIC with prejudice because Doss "failed to timely prosecute [it]." That ruling left EPIC's demand against Boatmen's for attorney fees as the only unadjudicated claim.

Boatmen's moved for summary judgment in its favor on that claim. The trial court granted the motion. EPIC brings the instant appeal from that judgment.

In resolving an appeal from a summary judgment, an appellate court reviews the record in the light most favorable to the party against whom judgment was entered, according that party the benefit of all reasonable inferences from the record. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376[1] and [3] (Mo. banc 1993). The propriety of summary judgment is purely an issue of law; inasmuch as the trial court's judgment is founded on the

record and the law, an appellate court need not defer to the trial court's ruling. *Id.* at [6].

The purpose of summary judgment is to permit a trial court to enter judgment without delay where the moving party demonstrates, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law. *Id.* at [7].

There was a fact dispute in this case when this court decided *Doss–I.* The dispute is spelled out in 901 S.W.2d at 218–22. As explained there, EPIC leased copy machines from Copytech. *Id.* at 218. Copytech thereafter assigned the lease to Boatmen's. *Id.* at 218–19. Boatmen's subsequently assigned the lease to Doss, who later sued EPIC for alleged delinquent lease installments. *Id.*

EPIC maintained it was not liable to Doss on the lease because Boatmen's, prior to assigning the lease to Doss, either (1) entered into a contract with EPIC to cancel the lease, or (2) waived its rights under the lease. *Id.* at 219–22. This court held in *Doss–I* that a fact finder, upon hearing the evidence, could find for EPIC on Doss's claim on either theory. *Id.* at 221–23. That holding became the law of the case. *See: Lonnecker v. Borris,* 245 S.W.2d 53, 55[1] and [2] (Mo.1951).

In the present appeal, Boatmen's does not argue that any new evidence surfaced after *Doss–I* which would resolve the fact dispute identified above. Instead, Boatmen's declares the fact dispute "is irrelevant to the issue of whether [EPIC] is entitled to attorney fees." As this court understands Boatmen's, its position is that even if the fact dispute is resolved favorably to EPIC, the law does not grant EPIC a right to recover from Boatmen's the attorney fees incurred by EPIC in defending itself—successfully, as matters turned out—against Doss's claim.

Both sides cite *Forsythe v. Starnes,* 554 S.W.2d 100, 111[21] (Mo.App.1977), which says:

"In Missouri attorney's fees are ordinarily recoverable only when authorized by statute or contract, when a court of equity finds it necessary to award them in order to balance benefits, or when they are incurred because of involvement in collateral litigation."

As this court comprehends EPIC's brief, EPIC does not maintain that its claim against Boatmen's for attorney fees is based on a statute or contract, nor does EPIC argue that a court of equity could find it necessary to award EPIC attorney fees from Boatmen's "to balance benefits." Accordingly, by process of elimination, EPIC's claim for attorney fees hinges on the third scenario in *Forsythe,* i.e., attorney fees incurred because of involvement in collateral litigation. On that subject, *Forsythe* explains:

"To be awarded attorney's fees incurred as a result of collateral litigation, the wronged party must show that the litigation was the natural and proximate result of the wrong or breach of duty by the other party, that the fees were necessarily and in good faith incurred to protect the wronged party from injury and that the amount of the fees is reasonable."

*Id.* at 111[22].

An example of a party's entitlement to attorney fees under the "collateral litigation" rule appears in *Johnson v. Mercantile Trust Company National Association,* 510 S.W.2d 33 (Mo.1974). There, Mercantile agreed to sell two individuals 1,240 shares of capital stock of Farmers and Merchants Bank of St. Clair ("F & M"). *Id.* at 34. The F & M shares were owned by persons who had obtained a loan from Mercantile and pledged the shares as security for the loan. *Id.* at 35. Some two years after Mercantile ostensibly sold the F & M shares to the buyers, F & M filed suit against the buyers and Mercantile seeking a determination of ownership of the shares. *Id.* at 37. The buyers tendered the defense of the suit to Mercantile, but Mercantile declined to assume it. *Id.*

The trial court found Mercantile had not sold the buyers the 1,240 shares, but had sold only the notes secured by the shares. *Id.* The buyers tendered the prosecution of an appeal to Mercantile, but Mercantile declined to prosecute it, whereupon the judgment became final. *Id.*

The buyers thereupon sued Mercantile for sundry relief including attorney fees incurred by them in defending themselves against the F & M suit. *Id.* at 34, 39. The trial court found for the buyers; Mercantile appealed.

Regarding the attorney fee award, the Supreme Court of Missouri held:

"There is no question that the [buyers] tendered the defense and appeal of the [F & M] lawsuit to Mercantile and that they, in undertaking to defend that suit, attempted to defend the title to the stock Mercantile had agreed to convey to them. Nor is there any question that the fees and costs allowed are not reasonable. The question of attorney's fees and costs in this case thus come within the rule that 'Where * * * the natural and proximate result of a wrong or breach of duty is to involve the wronged party in collateral litigation, reasonable attorneys' fees necessarily and in good faith incurred in protecting himself from the injurious consequence thereof are proper items of damages.' "

*Id.* at 40[6].

Boatmen's insists *Johnson* does not support EPIC's claim for attorney fees. According to Boatmen's, the attorney fee award in *Johnson* "was based on the breach of specific contractual obligations from which a legal duty arose." However, Boatmen's does not enlighten this court as to what those "specific contractual obligations" were, and this court's reading of *Johnson* reveals that "Mercantile did not prepare a written agreement fully setting out the terms of the transaction." *Id.* at 36. It thus appears to this court that the

attorney fee award in *Johnson* was based on a "wrong" by Mercantile, i.e., Mercantile's failure to transfer ownership of the F & M shares to the buyers, as a result of which the buyers were sued.

In *Doss–I,* this court wrote:

"A Boatmen's representative picked up the machines on November 2, 1990, at EPIC's dock.... Boatmen's charged the transaction off on its books. Jones [an officer of Boatmen's] explained that the charge-off was customary as to transactions which were in default, so that the books would not assign value to doubtful assets. The bank ceased sending notices of installments to EPIC, and made no attempt to collect further payments. In December of 1990 it leased the machines to another customer."

901 S.W.2d at 219.

As observed earlier in this opinion, *Doss–I* held a fact finder could reasonably conclude from the above facts, together with other evidence set forth in *Doss–I,* that Boatmen's either (1) entered into a contract with EPIC to cancel the lease, or (2) waived its rights under the lease. Either finding would support an inference that Boatmen's would not thereafter have sued EPIC on the lease, as Boatmen's would have realized such a suit would be futile. Thus, a fact finder could reasonably conclude that had Boatmen's not assigned the lease to Doss on March 1, 1991, EPIC would never have found itself embroiled in this litigation.

■ The question thus becomes whether, by assigning the lease to Doss, Boatmen's committed a wrong against EPIC entitling EPIC to recover from Boatmen's the attorney fees incurred by EPIC in defending itself against Doss.[1]

This court begins its analysis of that issue by recognizing an argument can be made that had Boatmen's, instead of Doss, sued EPIC on the lease, and had EPIC won, EPIC could not have recovered attor-

---

1. As reported in *Doss–I,* the lease was one of 129 leases of machines Boatmen's assigned to

Doss, for which Doss paid Boatmen's a lump sum. *Id.* at 219.

ney fees from Boatmen's, as nothing in the lease granted EPIC that right. Based on that hypothesis, the further contention can be made that EPIC cannot recover from Boatmen's the attorney fees incurred by EPIC in defending itself against Doss, the assignee of Boatmen's, as the assignment conferred no new rights on EPIC.

Such a theory, while superficially plausible, is not necessarily sound. Had Boatmen's sued EPIC on the lease knowing EPIC was immune from liability in that Boatmen's had either (1) contracted with EPIC to cancel the lease or (2) waived its rights under the lease, EPIC, upon winning the suit, could have brought a malicious prosecution action against Boatmen's. That is illustrated by *Koury v. Straight*, 948 S.W.2d 639, 641[3] (Mo.App. W.D.1997), which explains that in order to establish a claim of malicious prosecution arising from the filing of a civil action, a plaintiff must prove: (1) an earlier suit was commenced against the plaintiff; (2) the suit was instigated by the defendant; (3) the suit was terminated in the plaintiff's favor; (4) probable cause for the suit was lacking; and, (5) the plaintiff was damaged by the suit. Attorney fees are a compensable element of damages in a suit for malicious prosecution. *Turman v. Schneider Bailey, Inc.*, 768 S.W.2d 108, 113[13] (Mo.App. W.D.1988).

If Boatmen's could have been held liable to EPIC for EPIC's attorney fees had Boatmen's unsuccessfully sued EPIC on the lease, this court perceives no reason why Boatmen's should escape liability for EPIC's attorney fees where, as here, Boatmen's assignee—Doss—unsuccessfully sued EPIC on the lease.

 This court therefore holds that if, at the time Boatmen's assigned the lease to Doss, Boatmen's had no probable cause to believe EPIC could be held liable to Doss on the lease, Boatmen's committed a wrong against EPIC entitling EPIC to recover from Boatmen's the reasonable attorney fees incurred by EPIC in defending itself against Doss.

Viewing the record favorably to EPIC, this court holds a fact finder could find that at the time Boatmen's assigned the lease to Doss, Boatmen's had no such probable cause. As recounted in *Doss–I*, Boatmen's provided Doss a list of "nonperforming leases" which included the lease in issue here. 901 S.W.2d at 219. Furthermore, as noted earlier, during the four-month interval between the date Boatmen's picked up the machines from EPIC and the date Boatmen's assigned the lease to Doss, Boatmen's sent EPIC no notice that any installment was due under the lease and made no attempt to collect anything from EPIC. *Id.*

There may, of course, have been sundry reasons for Boatmen's reticence to pursue EPIC. Boatmen's may have harbored the notion that EPIC remained liable on the lease, but that the likelihood of a recovery from EPIC, measured against the expense of seeking it, was not great enough to justify the effort. Or, Boatmen's could have concluded that from a business standpoint, the ill will resulting from such an effort would outweigh any recovery Boatmen's was likely to obtain. Those possibilities, however, are for a fact finder to sort out.

For the reasons heretofore set forth, this court holds the record does not demonstrate that Boatmen's, on the basis of facts as to which there is no genuine dispute, is entitled to judgment in its favor as a matter of law on EPIC's claim for attorney fees. Accordingly, as in *Doss–I*, this court reverses the judgment and remands this case to the trial court for further proceedings consistent with this opinion.

PREWITT, P.J., and PARRISH, J., concur.